**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Louis Martin RADETSKY, a/k/a L. M.
Radetsky, Defendant-Appellant.**

**No. 74–1484.**

United States Court of Appeals,
Tenth Circuit.

Argued March 27, 1975.

Decided March 29, 1976.

As Amended May 26, 1976.

Richard J. Spelts, First Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Bruce D. Pringle, Denver, Colo. (James A. Clark, Clark, Martin & Pringle, Denver, Colo., on the brief), for defendant-appellant.

Before LEWIS, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant-Appellant Radetsky, a Colorado osteopathic physician, was indicted on 41 substantive counts under 18 U.S.C.A. §§ 1001 and 2, and a conspiracy count under 18 U.S.C.A. § 371, in connection with the submission of allegedly false medicare claims. Three of the substantive counts were dismissed by the Government prior to trial. The trial court dismissed the conspiracy count at the close of the evidence. The defendant was found not guilty by the jury on six substantive counts, and convicted on guilty verdicts on 32 of the remaining substantive counts. The court imposed a

$1,500 fine on each of these 32 counts, or a total fine of $48,000, and defendant appeals.

Defendant argues numerous propositions for reversal. We find it necessary to discuss several of the principal appellate contentions at some length concerning: (1) whether the indictment was defective, among other things failing to meet required standards of specificity and failing to allege particular statements charged to have been false so that the grand jury's charges were not known, with trial and convictions occurring on charges specified only in the bill of particulars in violation of defendant's Fifth Amendment right that he not be held to answer "unless on a presentment or indictment of a Grand Jury;" (2) whether it was error for the bill of particulars, together with the indictment, to be sent with the jury for its deliberations; (3) whether prosecution was proper under 18 U.S.C.A. § 1001, a general felony statute, instead of under 42 U.S.C.A. § 408, a more recent and specific misdemeanor statute, covering false statements made for use in determining medicare payments, among other things; (4) whether there was error in admitting over defendant's Fifth Amendment objection, and in not ordering the return of, records found to have been subpoenaed from a professional corporation where defendant practiced, but said to have been his personal papers and records; (5) whether the trial court erred in denying inspection of grand jury testimony of Government witnesses; (6) whether there was error in denying challenges to jurors who had read pretrial publicity material concerning defendant; (7) whether the trial court erred in the exclusion and admission of evidence; and (8) whether certain counts contained allegations of false statements which the court should have held immaterial as a matter of law, and whether the trial court, in any event, erred in submitting the issue of materiality to the jury without a proper instruction.

We will treat the facts in discussing the appellate issues before us.

I

*The Fifth Amendment guaranty concerning indictment by grand jury and the sufficiency of the indictment*

The Fifth Amendment provides in part:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . .[1]

The related provision of the Sixth Amendment states:

In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . .

The importance of the historic guaranty of the provision for indictment by a grand jury has long been recognized. In *Ex parte Bain,* 121 U.S. 1, 11, 7 S.Ct. 781, 786, 30 L.Ed. 849, 852, the opinion recited this portion of a grand jury charge by Justice Field:

. . . Yet the institution was adopted in this country, and is continued from considerations similar to those which give to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity. No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes unless this body, consisting of not less than sixteen nor more than twenty-three good and lawful men, selected from the body of the district, shall declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial.

1. If presentment ever were an *alternative* to indictment, this has not been the case since adoption of the Federal Rules of Criminal Procedure, which make no provision for prosecution by presentment. *Gaither v. United States,* 134 U.S.App.D.C. 154, 413 F.2d 1061, 1065, n. 1.

See *Russell v. United States,* 369 U.S. 749, 771, 82 S.Ct. 1038, 1051, 8 L.Ed.2d 240, 255; *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252, 257; see also *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569, 580.

It is this fundamental guaranty to be tried only on charges made by a grand jury that mainly concerns us. The substantial safeguard of the guaranty to those charged with serious crimes cannot be eradicated under the claim that variations are mere technical departures from the rules. *Smith v. United States,* 360 U.S. 1, 9, 79 S.Ct. 991, 996, 3 L.Ed.2d 1041, 1047. And in honoring the guaranty we must be mindful of its corollary that a federal indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form. *Russell,* supra, 369 U.S. at 770–71, 82 S.Ct. at 1050–1051, 8 L.Ed.2d at 254–255. "Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney. . . . " *Ex parte Bain,* supra, 121 U.S. at 13, 7 S.Ct. at 787, 30 L.Ed. at 853.[2]

The purposes and requirements for the sufficiency of indictments have been variously stated, but the essentials are clear. First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet; second, it must be such as to show to what extent he may plead a former acquittal or conviction as a bar to further prosecution for the same cause. *Russell,* supra, 369 U.S. at 763–64, 82 S.Ct. at 1046–1047, 8 L.Ed.2d at 250–251; *United States v. Hess,* 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516, 518. And a purpose corollary to the first is that the indictment inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. *Russell,* supra, 369 U.S. at 768, 82 S.Ct. at 1049, 8 L.Ed.2d at 253; *United States v. Hess,* supra, 124 U.S. at 487, 8 S.Ct. at 573, 31 L.Ed. at 518. Furthermore, and of paramount importance, a sufficient indictment is required to implement the Fifth Amendment guaranty and make clear the charges so as to limit a defendant's jeopardy to offenses charged by a group of his fellow citizens, and to avoid his conviction on facts not found, or perhaps not even presented to, the grand jury that indicted him. *Russell,* supra, 369 U.S. at 770–71, 82 S.Ct. at 1050–1051, 8 L.Ed.2d at 254–255; see *Stirone v. United States,* 361 U.S. 212, 217–18, 80 S.Ct. 270, 273–274, 4 L.Ed.2d 252, 256–257; *Gaither v. United States,* 134 U.S.App.D.C. 154, 413 F.2d 1061, 1066–67.

Defendant argues that the present indictment is void and fails to perform any of the four functions discussed above, stressing most heavily that the impermissible vagueness of the indictment infringed on his Fifth Amendment guaranty that he be tried only on charges made by the grand jury and not on charges later determined by the prosecutor to be used as grounds for trial and conviction. (Opening Brief of Defendant-Appellant, 22–27). More specifically the indictment is challenged for lack of specificity in failing to identify specific false statements as to the "services" or "charges" referred to in the requests of medicare payments,[3] and claimed to have been the subject of knowing and wilful material concealment and covering up by trick, scheme and device.

We are not persuaded that the defendant has raised a serious problem here pertaining to any of the first three functions of the indictment—those relating to notice, double jeopardy, and sufficiency in law of the facts alleged to support a conviction. A detailed bill of particulars was

---

**2.** While the significance of the protection of the indictment process has been emphasized, it has not been held applicable to the States as a due process principle. See *Beck v. Washington,* 369 U.S. 541, 545, 82 S.Ct. 955, 957, 8 L.Ed.2d 98, 104.

**3.** Form SSA–1490, "Request For Medicare Payment" is the form submitted by physicians and individuals as claims for medicare payments. Portions of such requests pertaining to counts 34 and 36 are reproduced in the Appendix to this opinion, part c.

furnished to the defendant four months prior to trial, giving adequate specifics as to the particulars of the Government's proof. While a bill of particulars cannot save an invalid indictment, *Russell,* supra, 369 U.S. at 770, 82 S.Ct. at 1050, 8 L.Ed.2d at 254, it can serve to give adequate notice for trial preparation in these circumstances. See *Gaither v. United States,* supra, 413 F.2d at 1067. Likewise the bill of particulars, together with the record evidence of exhibits and testimony, affords protection against double jeopardy since the whole record is available to avoid being placed twice in jeopardy for the same offense. *Tritt v. United States,* 421 F.2d 928, 930 (10th Cir.). And we are satisfied that the indictment, set out in part in the appendix to this opinion, adequately alleged the facts in order to determine that an offense was stated sufficiently to support a conviction if one should be had. *Russell,* supra, 369 U.S. at 768, 82 S.Ct. at 1049, 8 L.Ed.2d at 253.

The argument based on the Fifth Amendment guaranty of trial only on an indictment of a grand jury raises serious questions. They must be carefully considered by focusing on the indictment in the context of the factual circumstances surrounding the requests for payment and the allegedly false statements and representations relied on by the Government, keeping in mind the important function of the constitutional guaranty and its historic protections.

We turn to the indictment and the particulars of two counts—count 34 and count 36—which illustrate the problem concerning this indictment. In part the indictment charges that the defendants [4]

. . . did unlawfully, knowingly and wilfully conceal and cover up by trick, scheme, and device material facts, and make and cause to be made false statements and representations of material

facts, all for the purpose of causing payments to be made under the provisions of Title XVIII of said Act, in that RADETSKY and STANDEFER did submit and cause to be submitted to Colorado Medical Service, Inc., aka Colorado Blue Shield, documents designated as Form SSA–1490, otherwise known as Request for Medicare Payment—Medical Insurance Benefits—Social Security Act (hereinafter in this indictment referred to as Request for Payment), to secure payment under Part B of Title XVIII of said Act, for medical services allegedly rendered in Colorado to the patients and for the periods of time stated hereinbelow, which Requests for Payment purport to show the date of each service, fully describe the medical services rendered for each date given, the charges, and the amount paid by the patients against such charges, WHEREAS, in truth and in fact, as RADETSKY and STANDEFER then knew, (1) the patients actually received medical services less frequently than stated on the Requests for Payment (dates in parenthesis hereinbelow indicate those when the patient did not receive any medical service), *(2) the Requests for Payment did not fully, truly and accurately describe the medical procedures and services for each date given as required (indicated hereinbelow by the word "services"). (3) the Requests for Payment did not disclose that the amounts shown as charges for services were at a higher rate and more than the customary charges of South Denver Clinic, Inc. to either medicare or nonmedicare patients for the same service (indicated hereinbelow by the word "charges",* and (4) the amounts shown on the Requests for Payment as already paid by the patients against such charges were inflated (indicated hereinbelow by the words "amounts paid"):

The indictment is more fully set forth in the appendix to this opinion, along with related parts of the bill of particulars and some relevant exhibits.

---

4. Another defendant, Standefer, was indicted also but her trial was severed from that of defendant Radetsky.

| COUNT | DATE OF CLAIM | TIME COVERED BY CLAIM | NAME OF PATIENT | MATERIAL FACTS |
|---|---|---|---|---|
| * * * * | * * | * * | * * * | * * * * * |
| 34 | 8–19–70 | 5–1–70 to 8–7–70 | BREYMAIER | Services, charges, amount paid. |
| * * * * | * * | * * | * * * | * * * * * |
| 36 | 6–3–70 | 1–19–70 to 5–25–70 | GLENN | Charges. |
| * * * * | * * | * * | * * * | * * * * * |

ALL OF THE FOREGOING COUNTS 1 THROUGH 41 in violation of Sections 1001 and 2, Title 18, United States Code. (Emphasis added)

As stated, defendant challenges the failure of the indictment to allege particulars in connection with the "services" and "charges" claimed to have been misstated, underlined items 2 and 3 in the body of the quoted portion of the indictment. Defendant says that because of the multiplicity of "services" and "charges" covered by each claim form, there is absolutely no way to tell whether the charges and services the prosecutor may list in the bill of particulars are those relied on by the grand jury as the basis for its charges. Thus, he argues, the Fifth Amendment guaranty is violated, relying, inter alia, on *Russell* and *Lowenburg v. United States,* 156 F.2d 22 (10th Cir.).

It is true that the requests for payment alleged in the indictment cover "services" and "charges" including numerous items, in some instances spanning up to 5½ months and 58 different charges for 58 items of service. Moreover, the Government's bill of particulars shows that while all items on

some requests for payment were challenged in several instances, in many instances not all the items were challenged as falsifications. For example, on Exhibit 36–A only 10 out of 40 items were challenged as false, whereas on Exhibit 34–A all 28 items were challenged.[5] And since the indictment's allegations are in somewhat general terms concerning falsification of "services" and "charges," it can be argued that the Government was free under this indictment to choose to introduce proof on any of numerous items. See *Lowenburg v. United States,* 156 F.2d 22, 23 (10th Cir.); *Van Liew v. United States,* 321 F.2d 664, 672 (5th Cir.).

■ We must agree that this question is difficult and close, in view of the requirements of the Fifth Amendment guaranty, as applied in *Stirone,* in *Russell* and in similar cases. There are, however, these specifics laid out in this indictment: it identifies each of the basic documents—the requests for payment—that are relied on as containing the false statements. Their dates and the single individual patients involved are set out, together with the period

---

5. In connection with counts 34 and 36, the extent of the numerous items covered by the requests for payments may be seen by examining those documents. Pertinent portions of them are also reproduced in part c of the Appendix.

In part b of the Appendix related portions of the bill of particulars are also reproduced. By comparison of the bill of particulars with the related request for payment, it is apparent that on count 36 the Government was challenging only some items within the "charges" covered by the request for payment (Exhibit 36–A). This is shown also by paragraph F of the con-

spiracy count (count 42) which alleged that the concealment and false statements, etc., were interspersed with legitimate services rendered (a judgment of acquittal was entered on this count by the court at the close of the evidence, making that count moot).

Since the indictment itself, see part a of the Appendix, alleged misstatements characterized merely as "services" and "charges," the defendant argues there was an impermissible vagueness permitting the prosecutor to challenge items without their having been designated by the grand jury itself.

of time covered by each request for payment. The four types of concealment and falsifications charged are specified—medical services not rendered, by date; medical procedures and services not fully, truly and accurately described ("services"); charges being at a higher rate and more than customary for the same service (charges); and the amounts paid, allegedly inflated above amounts already paid by the patients.

In the circumstances before us we feel the indictment adequately laid out the grand jury's charges and the general factual circumstances underlying them. See *United States v. Haskins,* No. 74–1691, 9th Cir. (October 23, 1974, unpublished); *United States v. Kones,* No. 74 Cr. 672–LFM, S.D. N.Y. (August 14, 1974, unpublished). The indictment set forth the essential facts and the nature of the offenses charged, and further details fall in the category of evidence on which the case would rest, which the indictment is not obliged to state. See *Mims v. United States,* 332 F.2d 944, 946 (10th Cir.); *Flying Eagle Publications, Inc. v. United States,* 273 F.2d 799, 802 (1st Cir.). And we feel this is not a case where the grand jury may have had a concept of the scheme essentially different from that relied on by the Government before the trial jury, as in *United States v. Curtis,* 506 F.2d 985, 989 (10th Cir.). See also *Stirone v. United States,* 361 U.S. 212, 217–18, 80 S.Ct. 270, 273–274, 4 L.Ed.2d 252, 256–257. While the question is serious and not free from doubt, we are persuaded that the indictment met the essential demands of the constitutional guaranty as staked out by the Supreme Court.

■ Defendant further asserts that evidence before the grand jury was insufficient to support the indictment; that the first grand jury declined to indict; and that hearsay and illegally held evidence were used before the second grand jury, relying on *United States v. Leibowitz,* 420 F.2d 39 (2d Cir.), and similar cases. The argument concerning the first grand jury is irrelevant. Cf. *United States v. Kysar,* 459 F.2d

422, 423 (10th Cir.). And it is clear that an indictment valid on its face—as we hold this to be—is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397, 402; see also *United States v. Calandra,* 414 U.S. 338, 344–45, 94 S.Ct. 613, 618–619, 38 L.Ed.2d 561; *United States v. Addington,* 471 F.2d 560, 568 (10th Cir.); *United States v. Kysar,* 459 F.2d 422, 424 (10th Cir.).[6]

II

*The bill of particulars*

Defendant argues that there was prejudicial error in submission of the bill of particulars, along with the indictment, to the trial jury for use in its deliberations at the request of the Government and over the defendant's objections. The argument follows from that made concerning the Fifth Amendment guaranty, already discussed, being specified in three points: that since the defendant could only be held to answer the grand jury's indictment, submission of the bill of particulars to the trial jury along with the indictment infringed on his rights under the constitutional guaranty; that the bill of particulars could only confuse the jury, since its purpose and use by the jurors were not explained by the instructions and the bill of particulars itself did not contain or explain the elements of the offenses; and that it was unfair to give the jury a written summary of the prosecution's case, which the defendant could not do in his behalf.

■ We must agree that submission of the bill of particulars to a trial jury is undesirable. The authority relied on by the Government, *Shayne v. United States,* 255 F.2d 739 (9th Cir.), cert. denied, 358 U.S. 823, 79 S.Ct. 39, 3 L.Ed.2d 64, is not persuasive. On appeal the defendants there argued that it was error to send the indictment to the jury without a bill of particulars, this resulting in eliminating others as conspirators except the two appellants.

---

**6.** A further attack on the indictment as improperly charging an offense under 18 U.S.C.A. §§ 1001 and 2 instead of under 42 U.S.C.A. § 408 is held to lack merit in Part III, infra.

The court merely said it was a matter of discretion whether the bill of particulars should be sent in, and that the decision not to do so was not error. Id. at 743. The more difficult problem here was not involved.

On the other hand we do not agree that cases primarily relied on by the defendant here dictate a reversal. In *United States v. Borelli*, 336 F.2d 376, 393 (2d Cir.), the court was reversing for other fundamental error and noted some further points, including a defense argument that the bill of particulars should not have been sent to the jury. The court said it should not have been sent to the jurors in the absence of a request from them; that the indictment makes the accusation; and that the submission of the bill of particulars was likely to be confusing, even with the instruction that it was not evidence. *Pipkin v. United States*, 243 F.2d 491, 494 (5th Cir.) merely held that the trial court did not err in refusing to read a bill of particulars to the jurors when complying with their request to have the indictment read to them. The court said that it would have been error to read the bill of particulars, as the jury would not have known what to do with it. We feel the cases did not deal with a situation close to ours and they do not convince us that reversible error occurred here.

7. In his argument for sending in the bill of particulars the prosecuting attorney stated in part (Tr. Vol. XVII, 1174–75):

My concern is that if we don't send in the Bill of Particulars, the jury is not going—they may well convict on one of the items listed on the request for Payment which hasn't even been challenged by the United States, and I think it would all be kind of a nullity in the process.

8. The trial court stated, id. at 1175:

THE COURT: Well, the Court has given some thought to the Bill of Particulars since yesterday afternoon. I have come to the conclusion that in view of the multicharges within the various Counts, that it's the only sensible thing to do, and the Court will do it, because it appears to the Court that a Bill of Particulars of this nature and in this type of a case is almost a necessity if the jury is going to return an intelligent verdict.

9. We are mindful of cases holding that no prejudicial error occurred by permitting a trial jury

As mentioned, we are not persuaded to approve the reading or sending in of a bill of particulars to a trial jury, over a defense objection, as was clearly made here. It does involve the potential of confusion with the grand jury's charges in the indictment and thus touches the sensitive area of the constitutional guaranty. This point is supported to some degree by a statement of the prosecuting attorney that if the bill of particulars was not sent in, the jury might well convict on items in the requests for payments not even challenged by the Government.[7] The trial court's statement of its ruling to send in the bill of particulars lends some further support to the defendant's contention.[8] Moreover, the submission of a bill of particulars to the trial jury does give some advantage to the Government as a written summary re-emphasizing the prosecution's case.[9]

■ We feel, however, that reversible error is not demonstrated by the defendant. There were careful instructions by the trial court concerning both the indictment and the bill of particulars, and we read the instructions as a whole as distinguishing adequately between the indictment as a statement of the charges and the bill of particulars as specifying with more particularity the basis of the charges.[10] The instructions were clear that the indictment

to view summary exhibits such as blackboards, not themselves in evidence, which listed items of proof in evidence. *E. g., United States v. Downen*, 496 F.2d 314 (10th Cir.), cert. denied, 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974). We are not persuaded to hold that such cases support reading or submitting the prosecution's bill of particulars to a trial jury.

10. In the opening portions of the charge the court referred three times to the *indictment* as making the charges (Tr. Vol. XVII, 1271–72). Later the court instructed in part (Id. at 1275):

You will have with you in the jury room a copy of the indictment and a copy of the bill of particulars filed by the government which specifies with more particularity than the indictment, the basis of the charges in the indictment.

Now, these documents are not evidence of any kind against the accused, and they do not create any presumption or permit any inference of guilt. They are nothing more

and the bill of particulars were not evidence. Moreover we do not believe that the bill of particulars amounted to a prejudicially unfair advantage for the prosecution. The trial exhibits were grouped in numbers correlating to the numbered counts of the indictment and the numbered exhibits, together with the related testimony, presented the essence of the Government's proof in an organized pattern. And, as we have said, we feel the indictment itself had adequately set forth the essential facts and the nature of the offenses charged.

While we conclude that the rule should be against giving the bill of particulars to a trial jury over a defense objection, we cannot agree that prejudicial error occurred here.

### III

*The objection to prosecution under 18 U.S.C.A. § 1001 instead of under 42 U.S.C.A. § 408*

Defendant attacks the indictment on the further ground that it proceeds under 18 U.S.C.A. § 1001 instead of under 42 U.S.C.A. § 408.[11] The argument is that § 408 is a later, more specific statute; that it deals directly with false statements in connection with medicare claims; that the statutes are

in conflict as to penalties and a § 408 violation is expressly termed a misdemeanor only; and that the more lenient statute should apply for all these reasons under settled rules of construction.

We must disagree. It is true that in construing penal statutes, it is the rule that later enactments repeal former ones practically covering the same acts but fixing a lesser penalty. *United States v. Yuginovich,* 256 U.S. 450, 463, 41 S.Ct. 551, 553, 65 L.Ed. 1043, 1047. And there are acts directly involved here—false written statements for medicare payment—that come under both penal statutes, although § 1001 is broader and deals with one who conceals or covers up by trick, scheme, or device a material fact as is also alleged in the indictment. See *Cohen v. United States,* 201 F.2d 386, 393 (9th Cir.). Section 408 is part of a misdemeanor statute with penalties and consequences significantly less harsh than those under the older felony statute with its more general provisions.

We feel nevertheless that the statutory provisions reveal no intent that 18 U.S.C.A. § 1001 was barred from application here by the enactment of 42 U.S.C.A. § 408. There is no indication of an intent to make the later act a substitute for any

---

than the formal method of accusing the defendant of the charges against him and advising him of the particularities of those charges.

Later the court instructed in part (Id. at 1286):

Now the exhibits, together with a copy of the indictment and a copy of the bill of particulars, will be furnished to you in the jury room.

The exhibits are there for your use, and let me again remind you that the indictment and bill of particulars are not evidence. They are merely the written charges against the defendant together with certain specifics about the charges.

11. The relevant statutory provisions appear in 18 U.S.C.A. § 1001 and 42 U.S.C.A. § 408(b) and (c), which provide in turn:

§ 1001. Statements or entries generally

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or devise a material fact, or makes any false,

fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 749.

\* \* \* \* \* \*

§ 408. Penalties

Whoever—

\* \* \* \* \* \*

(b) makes or causes to be made any false statement or representation of a material fact in any application for any payment or for a disability determination under this subchapter; or

(c) at any time makes or causes to be made any false statement or representation of a material fact for use in determining rights to payment under this subchapter;

\* \* \* \* \* \*

shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

part of the earlier statute. *United States v. Gilliland*, 312 U.S. 86, 96, 61 S.Ct. 518, 523, 85 L.Ed. 598, 605; see *Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351, 355. There is no controlling significance in the difference in the penalties and no repugnancy in subject matter of the two statutes. *Gilliland*, supra, 312 U.S. at 95, 61 S.Ct. at 523, 85 L.Ed. at 604. And there is no straightforward or direct rejection of the prior statute. See *Friends of the Earth v. Armstrong*, 485 F.2d 1, 9 (10th Cir., en banc), cert. denied, 414 U.S. 1171, 94 S.Ct. 933, 39 L.Ed.2d 120 (1974).

We are persuaded to follow the holdings in *United States v. Chakmakis*, 449 F.2d 315, 316 (5th Cir.), and *United States v. Matanky*, 346 F.Supp. 116 (C.D.Cal.), aff'd, 482 F.2d 1319 (9th Cir.), cert. denied, 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973), and conclude that prosecution under 18 U.S.C.A. § 1001 was not improper.

### IV

*The Fifth Amendment self-incrimination objection to admission of exhibits from defendant's clinic*

Defendant contends that error occurred in denial of the motion to suppress records subpoenaed by the first grand jury from the South Denver Clinic where defendant practiced. He says they were his personal records of treatment of patients; that the existence of the professional corporation, of which he was president and sole shareholder [12] at the time of the alleged offenses, makes inapplicable the rule that corporate records are not protected by the Fifth Amendment privilege against self-incrimination; and that the court erred in not ordering return of the records to defendant or the South Denver Clinic.

An original and a renewed motion to suppress were heard and denied by the trial court. Our record contains the argument on the renewed motion, raising in essence the points outlined above and brief statements on the motion for return of the records (Tr. Vol. I, 10–21). It also contains the rulings denying the motions (Id. at 20–21). While we have no evidentiary record concerning the motions as such, the facts which we feel dispositive are shown by the trial record.

The South Denver Clinic was organized in 1969 as a professional corporation under Colorado law. See C.R.S.1973, 12–36–134. The defendant testified at trial that he was president and that he and his wife were the only stockholders in 1970 and 1971. There were two doctors, the defendant and Dr. Griffin, and three regular clinic employees. The defendant said the patients were considered those of the individual doctors; however, when asked about money received from patients Dr. Griffin brought in, or medicare payments on their behalf, defendant said it went to the clinic (Tr. Vol. XIII, 928–32). The statements to the patients were on forms showing "South Denver Clinic," and also the names of the two doctors. Of the few checks in evidence, some were payable to defendant and some to the Clinic, but all were deposited to the credit of the Clinic.

The record exhibits in question consist of the yellow patients' charts; blue slips showing the test or service rendered, and the charge for it; punched business machine accounting cards showing dates of visits by patients, the doctor, the service, charges and credits; and the day sheets on all patients patronizing the clinic, showing their names and charges to them.

The defendant said that the records, "the yellow charts and so on . . ." were the property of the corporation, but were under his custody and control. [13] The de-

12. At trial the defendant testified that he and his wife were the only stockholders of the corporation and that he was its president (Tr. XIII, 928).

13. The "yellow charts" are the patients' records showing diagnosis, treatment, dates of visits and findings, and listing medications for the patients covered by the 41 substantive counts. They were attached as exhibits with the requests for payments and other exhibits in groups correlating to each patient covered by the substantive counts.

fendant described the yellow sheets as a nurse's record, not a doctor's record.

We cannot agree that any error by the trial court is demonstrated. The professional corporation was organized as an independent institutional entity for the continuing conduct of the medical practice of the clinic. *Bellis v. United States*, 417 U.S. 85, 95–97, 94 S.Ct. 2179, 2186–2187, 40 L.Ed.2d 678, 687–690. The records were not treated as being held by the doctors individually but were held in a representative capacity for the clinic. Id. at 97, 94 S.Ct. at 2187, 40 L.Ed.2d at 689; *Matter of Berry*, 521 F.2d 179, 183 (10th Cir.), cert. denied, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256, 44 U.S.L.W. 3264 (1975). They were not possessed as private property which the Fifth Amendment protects. *Matter of Berry*, supra at 183.[14] Moreover, the argument as to return of the documents is untenable since making available copies of the documents was accepted as sufficient, and the originals were properly subject to retention for trial, which was the intent of the court's order. See *Application of Bendix Aviation Corp.*, 58 F.Supp. 953, 954 (S.D.N.Y.) (Tr. Vol. XIX, 57).

### V

*The denial of pretrial access to grand jury transcripts*

Defendant contends there was error by the trial court in denying motions to inspect grand jury testimony of Government witnesses before trial; that the Jencks Act as amended in 1970, 18 U.S.C.A. § 3500, does not bar pretrial discovery of such testimony; that under the test of balancing the interests in protecting the grand jury testimony, or under the test of a showing of a particularized need, he met the requirements for being furnished such aids; and that his need was increased because of an improper admonition of secrecy to witnesses by Government counsel at the grand jury proceeding in violation of Rule 6(e), F.R.Crim.P.[15]

We must agree the admonition to the witness is contrary to the provisions of Rule 6(e) that "[n]o obligation of secrecy may be imposed upon any person except in accordance with this rule." No provision in the rule applied to support the admonition.[16] See *In re Langswager*, 392 F.Supp. 783, 788 (N.D.Ill.). However, we agree with the Government that no prejudice was shown in connection with the admonition or the trial court's denial of the transcripts.

Defendant argues that key Government witnesses flatly refused to discuss any aspect of their grand jury testimony with defendant's attorney. We are referred to testimony of Dr. Griffin in which he admitted refusing to talk to a representative from defense counsel's office and that he, Griffin, was not willing to talk about the case (Tr. Vol. XII, 769–70). Dr. Griffin was

---

14. The confidentiality arising out of the doctor-patient relationship is relied on by the defendant. He refers to the provision in the professional corporation statute that it shall not be deemed to modify the physician-patient privilege. See C.R.S.1973, 12–36–134(5). However, the Government points out that the medicare patients made a waiver on the request for payment forms. This is a broad waiver to the Social Security Administration or its intermediaries or carriers for the furnishing of information about the patient. Under State law the patient could waive this privilege. *Kelley v. Holmes*, 28 Colo.App. 79, 470 P.2d 590, 592.

15. The admonition by Government counsel to Dr. Griffin, a principal Government witness, was as follows (Supp. Vol. III, 89):

[GOVERNMENT COUNSEL] At this time, Dr. Griffin, it is my duty to advise you that the Grand Jury proceedings are confidential by court order. That the fact that you have been here, the questions which were asked, and the answers which were given are not to be discussed with anyone, and if you feel the need to do so, you should first seek the permission of U. S. District Judge through your attorney, Mr. Creamer.

THE WITNESS: I understand that, sir.

[GOVERNMENT COUNSEL] The matters remain confidential, and I would ask at this time, Mr. Foreman, that the witness be instructed that his subpoena continues in effect, and he is to report back to the Grand Jury in March at the date notified by the United States Attorney.

16. The Government advises us by its brief that the practice of giving such admonitions to witnesses has since been discontinued in the District of Colorado (Brief of Appellee, 53).

a key Government witness and did give damaging testimony against defendant. And we assume it would have been desirable and advantageous that defendant know the details of what was to come in advance. Nevertheless, the transcript of his grand jury testimony was made available to defense counsel before Dr. Griffin commenced his direct testimony. It was available during direct testimony and a noon recess which intervened before cross-examination.

No reference is made to any specific prejudice to defendant from not having the transcripts earlier. Regardless of whether the Jencks Act provisions or the particularized need standard applies, see *United States v. Quintana*, 457 F.2d 874, 878 (10th Cir.), cert. denied, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130; *United States v. Tager*, 481 F.2d 97, 100 (10th Cir.), cert. denied, 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974), we are satisfied that any error was harmless and not prejudicial.[17] Defendant's position remains in effect a general claim that it was error to deny him the transcripts because they were needed for the defense, and this is not enough. *United States v. Addington*, 471 F.2d 560, 569 (10th Cir.).

## VI

### The pretrial publicity and denial of challenges to jurors

Defendant urges reversal on the ground of pretrial publicity and the denial of challenges for cause to jurors. He says that there were several unfavorable articles about him in the Denver papers, and prejudicial television coverage; that misleading stories in the media were caused by statements of Government counsel; that five potential jurors replied they had read one or more articles concerning defendant, and that challenges for cause were erroneously denied.

There was considerable unfavorable publicity concerning defendant, and several jurors had read some of the articles. Nevertheless, the exposure of jurors to pretrial publicity does not compel their disqualification. *Beck v. Washington*, 369 U.S. 541, 557, 82 S.Ct. 955, 964, 8 L.Ed.2d 98, 111; *Welch v. United States*, 371 F.2d 287, 292 (10th Cir.), cert. denied, 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 303. In *United States v. Smaldone*, 485 F.2d 1333, 1346 (10th Cir.), cert. denied, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974), the remedial step taken was to excuse all jurors who had knowledge of the publicity, but that remedy is not mandatory. Here the trial judge carefully questioned all potential jurors concerning their state of mind. He asked additional questions of those who acknowledged they had read or heard the pretrial publicity, and ascertained whether they could serve as fair and impartial jurors, having read the material (*E. g.*, Tr. Vol. III, 9–10, 27).

We are satisfied the procedure met the standards for a fair trial. See *Beck v. Washington*, supra, 369 U.S. at 557, 82 S.Ct. at 955, 8 L.Ed.2d at 111; *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 756; *Welch v. United States*, supra at 292. And we cannot say the pretrial publicity was so intensive or that examination of the entire panel revealed such prejudice that a court could not believe the jurors' answers and would be compelled to find bias or preformed opinions as a matter of law. *Beck v. Washington*, supra, 369 U.S. at 557, 82 S.Ct. at 955, 8 L.Ed.2d at 111.

## VII

### Claims of error in the exclusion and admission of evidence

*First*, defendant claims error in rejection of offers of proof from several patients who would have testified that defendant on numerous occasions did not bill or charge them for his services. The offer covered patients able to pay and others

---

**17.** Under the particularized need standard it has been indicated that Government inspired silence might premise a showing of need for a transcript, see *United States v. Mitchell*, 372 F.Supp. 1239, 1258 (D.D.C.), but we need not decide the question since we feel there was no prejudice to defendant.

unable to pay. It was argued to the trial judge that such evidence was relevant and admissible to show a lack of motive by defendant to commit the offenses; that it was to meet Government proof that defendant's actions were caused by pressure he felt with respect to overhead and salaries, and that he had to get the money to pay overhead and expenses (Tr. Vol. XIV, 986–88).

The court considered the generalized offer of proof and rejected it on the ground that it was irrelevant and that there would be no limit to the evidence that could be produced, if such testimony were admitted. We cannot say there was an abuse of discretion in the ruling on relevance and reasonable limits on proof. See *United States v. Twilligear*, 460 F.2d 79, 81 (10th Cir.). Insofar as the offer went to proof of defendant's character, we note that five character witnesses were allowed by the court, and no abuse on this score is shown.

█ *Second*, defendant claims error in exclusion of proof which would suggest that the defendant was a victim of discriminatory prosecution because of his earlier association with the Dita Beard Congressional investigation controversy. The proof offered was testimony by defendant relating his role in the Congressional investigation, where he offered his professional opinion that Mrs. Beard was not able to appear before any committee, and that within days after public announcement of his opinion, his case was referred for prosecution. Defendant further offered to prove that the same thing happened to other doctors treating Mrs. Beard who expressed the same opinion of her inability to testify (Tr. Vol. XIII, 890–93).

The trial court sustained a Government objection to the offer, without stating reasons for the ruling. Without deciding whether such proof might be grounds for challenging criminal proceedings, see *United States v. Falk*, 479 F.2d 616, 619–622 (7th Cir.), we sustain the ruling due to the remoteness and insubstantial nature of the offer of proof against the presumption of good faith in the prosecution, id. at 620, and

the impropriety of the offer of such proof, which should have been made as a pretrial motion, rather than during the jury trial of the general issue. Rule 12(b), F.R.Crim.P.; see *United States v. Oaks*, 508 F.2d 1403 (9th Cir.).

█ *Third*, defendant says there was error in the admissions of medicare bulletins, Plaintiff's Exhibits 45A, 45B and 45C. We find no error or abuse of discretion in their admission in view of the testimony by Dr. Griffin concerning defendants' handling of medicare bulletins generally at the clinic (Tr. Vol. XIV, 687–89).

## VIII

### *The materiality issue*

At trial and on appeal one of the defendant's main arguments is that the issue of materiality of the alleged misrepresentations on the requests for payment should not have been submitted to the jury; that as to some 25 counts, part or all of the items of alleged misrepresentation were related to several drugs which the proof clearly showed to be noncompensable under established guidelines used by the medicare payment agency in Denver (Colorado Blue Cross-Blue Shield); that since the statements related only to such non-compensable drugs, they were incapable of inducing payments, and were not material as a matter of law. Thus, it is argued, the convictions on these counts cannot stand.

█ The governing principles are clear. Materiality of the alleged misstatements is an essential element of offenses defined by 18 U.S.C.A. § 1001. *Gonzales v. United States*, 286 F.2d 118, 120 (10th Cir.), cert. denied, 365 U.S. 878, 81 S.Ct. 1028, 6 L.Ed.2d 190 (1961). The indictment here alleged that defendant's concealments, false statements and the like were of "material facts." The trial court recognized materiality as an essential element of the offenses and so charged the jury. There must be sufficient Government proof under the standard applied in criminal cases that the alleged misstatement was material. See *Poulos v. United States*, 387 F.2d 4, 6 (10th Cir.).

The application of these principles to a statement requesting payment from the Government has been made clear in *Bartlett and Company Grain v. United States*, 353 F.2d 338 (10th Cir.). That prosecution under 15 U.S.C.A. § 714m was for making a false statement to influence action of the Commodity Credit Corporation. A statement that grain was unloaded at a Kansas Warehouse was false. However, under documents governing authority for payment of the allowance sought, the court determined no payment was authorized unless grain was delivered "in store"; payment was not authorized if delivery was only "F.O.B. bin site." The Government proof was held to be clearly of the latter type of transaction, according to the record exhibits. And since payment was unauthorized if the grain had been unloaded in accordance with the representations in the statement, the misstatement proved was incapable of inducing payment by the CCC, and was therefore immaterial. Id. at 343.[17a]

It is this proposition that defendant relies on. He says the proof showed that the medicare payment agency guidelines excluded payment for the drugs involved in the 25 counts, in the circumstances shown. And since payment was not authorized, any misstatement could not induce payment and was immaterial as a matter of law.

We must agree with the substance of defendant's position. The facts about the 25 counts involved are not simple, but they may be summarized for our purposes.

Mr. Wells, an Assistant Vice President of Colorado Blue Cross-Blue Shield, testified for the Government. At the time in question he was Director of the Benefit Review Division (BRD) and it put out information on the compensability of drugs under medicare [18] (Tr. Vol. V, 131, *et seq.*). The BRD prepared a manual which followed the provisions of the medicare statute and regulations on compensability.[19] This written manual which was furnished to the processing division was introduced in evidence, Plaintiff's Exhibit 61.

The manual lists several hundred drugs. The notation "NB" was described by Mr. Wells as indicating "no benefit." [20] De-

---

**17a.** The statute involved in *Bartlett* concerned a false statement made "for the purpose of influencing in any way the action of [the CCC] or for purposes of obtaining for himself or another money or anything of value . . ." This is parallel to the test which applies under 18 U.S.C.A. § 1001 on materiality—that the statement ". . . has a natural tendency to influence, or was capable of influencing, the decision of the tribunal . . ." *Gonzales v. United States*, supra, 286 F.2d at 122. This was the test stated in the trial court's charge (Tr. Vol. XVII, 1277).

**18.** The determination of compensability for a particular drug under Medicare is no simple matter. The detailed statutory scheme for Medicare, 42 U.S.C.A. § 1395 *et seq.*, provides generally for compensation for drugs if the drugs are listed in any of five standard pharmaceutical compendia, or are specifically approved for use by a committee of hospital medical staff furnishing such drugs. 42 U.S.C.A. § 1395x(t). The statute excludes from coverage however, drugs which can be self-administered. 42 U.S.C.A. § 1395x(s)(2)(a) and (b). Federal regulations promulgated by the Social Security Administration exclude from coverage drugs used in immunization, where the drug is used for vaccination or inoculation not directly related to the treatment of an injury, 20 C.F.R. § 405.310(e), and also exclude

drugs which are not reasonable and necessary for the diagnosis or treatment of illness or injury, 20 C.F.R. § 405.310(k).

**19.** Mr. Wells testified that the statutes and regulations establish four basic criteria determining compensability (Tr. Vol. V. 132–135). Basically, the criteria require: (a) the drug must be listed in one of five standard drug compendia; (b) the drug must be incapable of self-administration; (c) the drug may not be given as an immunization; and (d) the drug must be reasonable and necessary for the diagnosis and treatment of the patient's illness.

Since medicare claims are processed not by doctors, but by laymen, Colorado Blue Cross-Blue Shield prepared a manual and a list of injectable drugs to aid clerks in the processing division (Tr. Vol. V, 132–135). This list of injectable drugs, Plaintiff's Exhibit 61, reduces criteria (a) and (b) to a checklist procedure. Also included in this manual are occasional cross references to drug guidelines which are attached to the drug list and which give some indication as to whether criteria (c) and (d) are satisfied in the administration of certain drugs.

**20.** Mr. Wells testified that drugs bearing the "NB" notation were not listed in the five compendia referred to by the statute and said they were not covered under any circumstance. He

fendant points out several drugs involved here carried the "no benefit" designation—Liparin, Thiosol, and Ethaverine (Spasmol), and we note Guiadin also. Claims relating to these drugs were involved in 12 counts.[21] When the motion for a directed verdict on this basis was made, the Government argued that other misstatements existed on the requests for payments, along with these items, and that since other items could support a conviction on the counts, the motion should be denied. The trial court agreed.

■ However, the presence of other material misstatements concerning a count cannot sustain a conviction in these circumstances. In submitting the case the noncompensable drug representations were not eliminated from the jury's consideration. Now, in reviewing the convictions on those 12 counts we cannot determine whether the jury may have relied on the immaterial misstatements concerning noncompensable drugs, which appear on the requests for payment before the jury. If in fact it was improper to consider any item of alleged misrepresentation, and that item could have been the basis for a general verdict of guilty on the count, the conviction cannot stand. See *United States v. Dota*, 482 F.2d 1005–1006 (10th Cir.), cert. denied, 414 U.S. 1071, 94 S.Ct. 583, 38 L.Ed.2d 477 (1973). Thus the convictions on these twelve counts must be set aside.

■ The problem relating to Heparin is more involved. The "Drug Listing" manual, Plaintiff's Exhibit 61, did not exclude it from coverage. However, it placed strict conditions on compensability.[22] The conditions were ones that related in large part to the diagnosis involved and the reasonableness of the use of the drug in the circumstances. The difficulty is that the requests for payment did not show diagnoses coming within the conditions for payment for Heparin. The Government proof on these counts did not extend to showing any additional statements or diagnoses furnished by defendant, which would result in the compensability of claims for Heparin. Without more, the mere statement of a claim for Heparin was not capable of inducing payment, as required for materiality by *Bartlett and Company Grain v. United States*, supra, 353 F.2d at 343.[23]

---

stated: *"No, they are specifically excluded from coverage."* (Tr. Vol. XII, 781) (emphasis added).

21. These twelve counts are counts 12, 13, 14, 22, 23, 24, 25, 26, 30, 35, 38 and 40.

22. Unlike Liparin, Thiosol, Ethaverine and Guiadin, Heparin and TBA (cortisone) are not designated "NB" in Plaintiff's Exhibit 61. The notation "Heparin Guideline" appears opposite Heparin in Plaintiff's Exhibit 61. The Heparin guideline appears at the back of Plaintiff's Exhibit 61 and reads:
Exclude from coverage except for:
phlebitis;
impending myocardial infaction with hospitalization the same day;
embolism-cerebral, pulmonary or peripheral with hospitalization
None of these diagnoses appear on any request for payment listing Heparin.
The defendant makes a similar argument with respect to TBA (cortisone). The notation "Steroid Guidelines" appears opposite TBA (cortisone) in Plaintiff's Exhibit 61. The Steroid guidelines are more complex. They specify that steroids may be given for certain diseases, including those appearing on the Request for Payment pertaining to count 8. For the diseases listed on the request for payment, steroids may only be given for periods of 2–3 weeks, and there must be a one month interval between the periods.
Five, TBA injections are listed on the request for payment, Plaintiff's Exhibit 8–A. The injections are dated 2/9/71, 2/16/71, 2/19/71, 2/23/71 and 3/1/71. The defendant contends that the Medicare agent had no authority to pay for the TBA injections of 2/23/71 and 3/1/71, apparently viewing their dates as beyond the 2–3 week period beginning with the 2/9/71 injection, and not meeting the required one month interval. (See Appellant's Brief at 51, n. 29). We reject this argument. By our calendar, the period from 2/9/71 through 3/1/71 is less than three weeks. Therefore, all five injections are compensable under the guidelines, the alleged false statements are material under *Bartlett*, and the conviction on count 8 can stand.

23. We are mindful of the fact that actual loss to the Government need not be shown. See *United States v. Godel*, 361 F.2d 21, 24 (4th Cir.), cert. denied, 385 U.S. 838, 87 S.Ct. 87, 17 L.Ed.2d 72 (1966). But the *Bartlett* requirement is clear on materiality and we must hold that here it was not sufficiently met to go to the jury as to the counts discussed in this Part VIII of the opinion.

The proof must be analyzed to see that there is sufficient evidence that the alleged misstatement was material. *E. g., Poulos v. United States*, 387 F.2d 4, 6 (10th Cir.). In reviewing the guilty verdicts we must determine, viewing the proof in the light most favorable to the Government, whether there is sufficient substantial proof, direct or circumstantial, together with reasonable inferences therefrom, from which a jury might find the defendant guilty beyond a reasonable doubt. *United States v. Twilligear*, 460 F.2d 79, 81–82 (10th Cir.). And *Gonzales v. United States*, supra, 286 F.2d 118, 120, makes it clear that materiality ". . . [is] an essential element of the offenses defined in Section 1001." In view of this requirement, and the state of the record, we must hold the proof was not sufficient to sustain the criminal convictions on these additional counts.[24]

Accordingly the judgment is affirmed as to the six counts not involving the issue of materiality;[25] as to the remaining 26 counts, the judgment is set aside,[26] and the case is remanded for dismissal of the indictment as to said counts.

## APPENDIX

### a. The Indictment

In part the indictment states:

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

Plaintiff,

v.

LOUIS MARTIN RADETSKY,
aka L. M. Radetsky,
MARIE STANDEFER,

Defendants.

CRIMINAL CASE NO. 73–CR–415
False Medicare Claims,
18 U.S.C. 1001 and 2;
Conspiracy to Defraud the
United States, 18 U.S.C. 371

### COUNTS 1 THROUGH 41

The Grand Jury charges:  *  *  *

D. That on or about the dates hereinbelow set forth in the State and District of Colo., in a matter within the jurisdiction of said Administration, LOUIS MARTIN RADETSKY, aka L. M. Radetsky and MARIE STANDEFER,[a] did unlawfully, knowingly and wilfully conceal and cover up by trick, scheme, and device material facts, and make and cause to be made false statements and representations of material facts, all for the purpose of causing payments to be made under the provisions of Title XVIII of said Act, in that RADETSKY and STANDEFER did submit and cause to be submitted to Colorado Medical Service, Inc., aka Colorado Blue Shield,

---

24. These additional counts are counts 9, 10, 16, 17, 18, 19, 27, 29, 31, 32, 33, 34, 39 and 41.

25. These counts are: 7, 8, 11, 15, 28 and 36.

26. These counts are: 9, 10, 12, 13, 14, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, 38, 39, 40 and 41.

The defendant challenged only 25 counts. We find no merit in his challenge to count 28. Although the defendant did not specifically challenge counts 16 and 17 as containing immaterial false statements, we find their position on the materiality problem indistinguishable as to the "charges" allegations of those counts, and we therefore reverse counts 16 and 17.

documents designated as Form SSA–1490, otherwise known as Request for Medicare Payment—Medical Insurance Benefits—Social Security Act (hereinafter in this indictment referred to as Request for Payment), to secure payment under Part B of Title XVIII of said Act, for medical services allegedly rendered in Colorado to the patients and for the periods of time stated hereinbelow, which Requests for Payment purport to show the date of each service, fully describe the medical services rendered for each date given, the charges, and the amount paid by the patients against such charges, WHEREAS, in truth and in fact, as RADETSKY and STANDE-FER then knew, (1) the patients actually received medical services less frequently than stated on the Requests for Payment (dates in parenthesis hereinbelow indicate those when the patient did not receive any medical service), (2) the Requests for Payment did not fully, truly and accurately describe the medical procedures and services for each date given as required (indicated hereinbelow by the word "services"), (3) the Requests for Payment did not disclose that the amounts shown as charges for services were at a higher rate and more than the customary charges of South Denver Clinic, Inc. to either medicare or non-medicare patients for the same service (indicated hereinbelow by the word "charges"), and (4) the amounts shown on the Requests for Payment as already paid by the patients against such charges were inflated (indicated hereinbelow by the words "amount paid":

a. The indictment refers to one Marie Standefer and one Richard E. Griffin, no charges being made against Griffin. The trial of defendant Radetsky was severed from that of Standefer, pursuant to a motion by the government.

| COUNT | DATE OF CLAIM | TIME COVERED BY CLAIM | NAME OF PATIENT | MATERIAL FACTS |
|---|---|---|---|---|
| * * | * * | * * * | * * * | * * * * * |
| 7 | 6–29–71 | 4–10–71 to 6–22–71 | CHARLES H. BRADY | House call on April (10); charges. |
| 8 | 4–28–71 | 2– 9–71 to 3– 1–71 | GLADYS JOHNSON | Office call and treatment on Feb. (9); charges. |
| 9 | 5–27–70 | 1– 9–70 to 5–15–70 | PEARL H. FOLTZ | Services, charges. |
| 10 | 3– 3–71 | 9–11–71 to 12–31–70 | PEARL H. FOLTZ | Office calls and treatment on Sep. (18), Oct. (2); services, charges. |
| 11 | 7–21–71 | 1–15–71 to 7– 2–71 | PEARL H. FOLTZ | Services, charges. |
| 12 | 5–27–70 | 1– 9–70 to 5–15–70 | EVA C. FISHER | Services, charges. |
| 13 | 3– 3–71 | 9– 4–70 to 12–23–70 | EVA C. FISHER | Office call and treatment on Sep. (11); services, charges. |

| COUNT | DATE OF CLAIM | TIME COVERED BY CLAIM | NAME OF PATIENT | MATERIAL FACTS |
|---|---|---|---|---|
| 14 | 7–14–71 | 1– 8–71 to 6–25–71 | EVA C. FISHER | Services, charges. |
| 15 | 5–25–70 | 1– 2–70 to 5– 1–70 | CARL E. DAHLQUIST | Services, charges. |
| 16 | 9– 1–70 | 5–22–70 to 8–21–70 | CARL E. DAHLQUIST | Services, charges. |
| 17 | 1–20–71 | 8–28–70 to 12–18–70 | CARL E. DAHLQUIST | Services, charges. |
| 18 | 7–14–71 | 1– 8–71 to 6–21–71 | CARL E. DAHLQUIST | Services, charges. |
| 19 | 12– 8–71 | 7– 9–71 to 11–26–71 | CARL E. DAHLQUIST | Services, charges. |
| 20 | 6–29–71 | 1– 7–71 to 6–25–71 | HENRY M. BOOK | Services, charges. |
| 21 | 12– 1–71 | 7– 2–71 to 11–18–71 | HENRY M. BOOK | Services, charges. |
| 22 | 4–15–70 | 2–12–70 to 3–26–70 | CHARLES W. CLARK | Services, charges. |
| 23 | 5–27–70 | 4– 2–70 to 5–15–70 | CHARLES W. CLARK | Services, charges. |
| 24 | 8–19–70 | 5–22–70 to 8–14–70 | CHARLES W. CLARK | Services, charges. |
| 25 | 1–27–71 | 8–21–70 to 12–31–70 | CHARLES W. CLARK | Services, charges. |
| 26 | 7–14–71 | 1–15–71 to 6–25–71 | CHARLES W. CLARK | Services, charges. |
| 27 | 12– 8–71 | 7– 9–71 to 11–19–71 | CHARLES W. CLARK | Services, charges. |
| 28 | 6–17–70 | 1– 2–70 to 5–25–70 | ALEDA J. SMITH | Charges, amount paid. |
| 29 | 9–30–70 | 6–18–70 to 9–10–70 | ALEDA J. SMITH | Services, charges, amounts paid. |
| 30 | 6– 9–71 | 1–21–71 to 6– 3–71 | ALEDA J. SMITH | Services, charges, amount paid. |

| COUNT | DATE OF CLAIM | TIME COVERED BY CLAIM | NAME OF PATIENT | MATERIAL FACTS |
|---|---|---|---|---|
| 31 | 6–17–70 | 1– 9–70 to 5–23–70 | PHILLIP SOLOWAY | Services, charges, amount paid. |
| 32 | 10– 7–70 | 6–18–70 to 9–29–70 | PHILLIP SOLOWAY | Services, charges, amount paid. |
| 33 | 5–27–70 | 1– 2–70 to 4–29–70 | ESTHER D. BREYMAIER | Services, charges, amount paid. |
| 34 | 8–19–70 | 5– 1–70 to 8– 7–70 | ESTHER D. BREYMAIER | Services, charges, amount paid. |
| 35 | 5–12–71 | 1– 7–71 to 4–15–71 | ELEANOR JOHNSON | Services, charges. |
| 36 | 6– 3–70 | 1–19–70 to 5–25–70 | DORA GLENN | Charges. |
| 37 | 11– 4–70 | 9– 4–70 to 10–30–70 | CLARENCE HEFLIN | Charges. |
| 38 | 4–28–71 | 1– 4–71 to 4–12–71 | LILIAN M. HUBBARD | Office call and treatment on Jan. (25); charges. |
| 39 | 8–27–71 | 4–26–71 to 8–13–71 | LILIAN M. HUBBARD | Charges. |
| 40 | 6–17–70 | 1– 8–70 to 6–16–70 | GEORGE A. WHEELER | Services, charges. |
| 41 | 6–23–71 | 1– 7–71 to 6–10–71 | GEORGE A. WHEELER | Charges. |

ALL OF THE FOREGOING COUNTS 1 THROUGH 41 in violation of Sections 1001 and 2, Title 18, United States Code.

COUNT 42

The Grand Jury further charges:

A.  The contents of paragraphs A, B, and C, of Counts 1 through 41, *supra*, are hereby incorporated herein by reference.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

F.  It was further a part of the conspiracy that in those instances where the charge on the Request for Payment was at a higher rate than the customary charge to the patient for the same service the addition would be of small amounts, e.g., $1.00 or $2.00 per service; that the concealment and cover-up of material facts as well as affirmative false statements and representations of material facts, as described in paragraph C, *supra*, would be interspersed with legitimate services rendered; all in an attempt to avoid detection.  .   .   .

b. The bill of particulars

The bill of particulars stated in part:

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIMINAL CASE NO. 73–CR–415 |
| LOUIS MARTIN RADETSKY,<br>aka L. M. Radetsky,<br>MARIE STANDEFER, | BILL OF PARTICULARS |
| Defendants. | |

The United States, by Richard J. Spelts, Assistant United States Attorney, submits this Bill of Particulars in accordance with the Court order of December 21, 1973. Information is supplied in two parts: I—Counts 1 through 41, and II—Count 42.

I.—COUNTS 1 THROUGH 41

Listed below for each count are the material facts which the defendants did unlawfully, knowingly and wilfully conceal and cover up by trick, scheme, and device, and make and cause to be made as false statements and representations. Drugs listed were in the form of an injection unless otherwise specified. South Denver Clinic, P. C., is referred to herein as the Clinic.

\* \* \* \* \* \* \* \* \* \* \* \* \*

### COUNT 34 (Breymaier)

(A) Services:

| Date | Per Request for Payment | Per Clinic Records and/or Patient |
|---|---|---|
| 5– 1–70 | Heparin and Mercuhydrin | Heparin and B–12 |
| 5– 9–70 | " | " |
| 5–15–70 | " | " |
| 5–22–70 | " | " |
| 6– 5–70 | " | " |
| 6–12–70 | " | " |
| 6–19–70 | " | " |
| 6–26–70 | " | " |
| 7– 3–70 | " | " |
| 7–10–70 | " | " |
| 7–17–70 | " | " |
| 7–24–70 | " | " |
| 7–31–70 | " | " |
| 8– 7–70 | " | " |

(B) <u>Charges</u>:

| Per Request for Payment | Per Clinic Records and/or Patient |
|---|---|
| 14 Office calls at $6 each; Injections (14 times) at $2 each time. | Office calls including injection: 6 at $6 each until 6–19–70, then 8 at $7 each. |

(C) <u>Amount Paid</u>:

The request for payment, box 10 "Amount Paid," claims the patient had already paid $112, whereas the patient paid less than this amount.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

<u>COUNT 36 (Glenn)</u>

(A) <u>Charges</u>:

| Per Request for Payment | Per Clinic Records and/or Patient |
|---|---|
| 5 office calls at $6 each; Injections (5 times) at $2 each time; all until 2–2–70. | 5 office calls including injection at $6 each until 2–2–70; thereafter $8 each as claimed on Request for Payment. |

### c. The requests for payment

Concerning count 34 (Breymaier). Plaintiff's Exhibit 34–A–1, the request for payment, read in part as follows:

Itemization of Account:

| | | |
|---|---|---|
| 5– 1–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 5– 9–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 5–15–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 5–22–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 6– 5–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 6–12–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 6–19–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 6–26–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 7– 3–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 7–10–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 7–17–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |

| | | |
|---|---|---:|
| 7–24–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 7–31–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| 8– 7–70 | Office Call & Examination | 6.00 |
| | 100 mg Heparin & lcc Mercuhydrin injections | 2.00 |
| | Total charges from 4–29–70 thru 8–7–70 | 112.00 |
| | Paid on Account | 112.00 |
| | Balance due | –0– |

Concerning count 36 (Glenn), Plaintiff's Exhibit 36–A, the request for payment, read in part as follows:

Itemization of Account:

| | | |
|---|---|---:|
| 1–19–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 1–22–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 1–26–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 1–29–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 2– 2–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 2– 5–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 2– 9–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 2–12–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 3– 2–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 3– 9–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 3–16–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |

*   *   *   *   *   *   *   *   *   *   *

| | | |
|---|---|---:|
| 3–23–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 3–30–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 4– 6–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 4–13–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |

| | | |
|---|---|---|
| 4–20–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 4–27–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 5– 4–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 5–11–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| 5–25–70 | Office Call & Examination | 6.00 |
| | Thiomerin injection | 2.00 |
| | Total charges from 1–1–70 thru 5–25–70 | 160.00 |
| | Paid on Account | 27.60 |
| | Balance due | 132.40 |

LEWIS, Chief Judge (dissenting).

I dissent from Part II of my Brother Holloway's opinion relating to the submission of the bill of particulars to the jury and my Brother Barrett's views on that aspect of the case.

This case is by its very nature one of complexity but with careful preparation and presentation that complexity need not have resulted in complete confusion. I am fearful that defendant was convicted on grounds other than proof beyond a reasonable doubt. And, to me, we seem to be perpetuating that confusion.

Recognizing that a bill of particulars is a self-serving prosecutorial document and neither part of the indictment nor evidence, the main opinion states that the prosecution gained an advantage by submitting the document to the jury but the defendant was not prejudiced by such untraditional procedure. But the trial judge termed submission of the bill of particulars as "almost a necessity if the jury is to return an intelligent verdict." In turn, the prosecutor indicated that without submission of the bill of particulars the jury "may well convict on one of the items listed on the request for payment which hasn't even been challenged by the United States."

In sum, I dissent because I believe that a bill of particulars is inherently a self-serving document created by the prosecution which should never be submitted to the jury absent a formal rule and that in this case the prejudice to defendant is glaringly apparent. I would grant a new trial on each count.

BARRETT, Circuit Judge (concurring in part and dissenting in part):

I.

I agree that in this case no prejudice resulted to Radetsky by reason of submission of the bill of particulars, together with the indictment and exhibits, for purposes of aid to the jury during its deliberations. I do not agree with the view that "the submission of a bill of particulars to the trial jury does give some advantage to the Government as a written summary re-emphasizing the prosecution's case". Criminal fraud cases such as this are most difficult to prepare and try. They involve—just as the record here reflects—that many laborious, tedious hours are required in order to uncover, unfold, reason upon, plan and develop the proper presentation of a case involving voluminous records and transactions. One is impressed that it seems possible that a defendant who creates a difficult, complicated, jig-saw factual puzzle may in fact succeed in aborting the basic purposes of the criminal justice system. The bill of particulars in this case does not contain any

prejudicial or conclusory language. It is in fact analogous to summaries so often prepared by the Trial Court of detailed evidence admitted in complicated tax evasion cases [*Oertle v. United States*, 370 F.2d 719 (10th Cir. 1966); *Sanseverino v. United States*, 321 F.2d 714 (10th Cir. 1963)] or summaries prepared by a party relating to voluminous documents or records. We have held that such summaries are admissible if the supporting documents (as in the instant case) are available. *Boehm v. Fox*, 473 F.2d 445 (10th Cir. 1973); *Ryder Truck Rental, Inc. v. National Packing Company*, 380 F.2d 328 (10th Cir. 1967). Similarly, a master's report involving an accounting report and damage findings may be treated as an item of evidence entitled to such weight as the jury may accord it. *Charles A. Wright, Inc. v. F. D. Rich Co.*, 354 F.2d 710 (1st Cir. 1966), cert. denied, 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673 (1966).

## II.

I respectfully dissent from the reversal of Radetsky's conviction on 26 of the counts. The criteria adopted by CMS for payment and/or non-payment of the specific drugs in issue does not, as the majority opinion states, make the issue of *materiality* a matter of law on the predicate (which I deem incorrect from the record) that the agency would not have tendered payments on the respective Requests for Payment filed by Radetsky.

I am troubled with the question as to whether the rule in *Bartlett*, relied upon in the majority opinion, applies here. On its face, it would appear to control. I have concluded, however, that the complexities of the problems involved in the Medicare payment area do not permit the application of *Bartlett*. There, the facts were simple and uncomplicated. The misstatement was contrary to *express* language employed in the statute [15 U.S.C.A. § 714m] authorizing payment for delivery of grain only "in store" whereas the application for payment stated that the grain was delivered "F.O.B. bin site". No such simplicity exists in the case at bar.

Reliance on the criteria ignores the expert testimony of Mr. Wells, Vice-President of CMS at the time of trial, who had 25 years experience with Blue Shield. He was thoroughly familiar with Medicare law. CMS serves as contract carrier to safeguard the fiscal integrity of Medicare in Colorado. Under detailed examination relative to the Radetsky claims for payments relating to the 26 counts here at issue, Wells explained the various alternatives of disclosed false versus concealed actual drugs in relation to the manner these could influence the action of Medicare. As the Government so succinctly points out in its brief summarizing Well's testimony: "Two situations are clear. (1) If the disclosed false [drug] is covered, but the concealed actual drug is not, it is material. (2) If the disclosed false drug is not covered, and the concealed actual drug is not covered under any circumstances, the concealment would not be material." Wells explained a different situation. If the concealed actual drug may be covered, it would influence Medicare. Even if the disclosed false drug were also covered, Medicare would deny the Request for Payment for having concealed the other drug. If the disclosed drug were covered, the concealment of another covered drug defeats Medicare's ability to have meaningful utilization review and measure the relation to diagnoses. (T. 787, 793). Even if the disclosed false drug is *not* covered, the false statement is material in defeating the Medicare program since a third party—the patient—is denied the benefit of the insurance on the actual covered drug. [Brief of Appellee, United States of America, Appendix A, Footnote 46, p. A–12]. It was precisely because of the variety of possible falsities involved that the Trial Court determined, and properly so, that the *dispute with respect* to whether the Request forms (a) contained misstatements (an essential element of the offense) and/or (b) contained material representations intended to influence Government agency (Medicare) action must be left for jury deliberation and determination as a matter of fact. In my judgment, this setting meets the re-

quirements of *Gonzales v. United States,* 286 F.2d 118 (10th Cir. 1960), cert. denied, 365 U.S. 878, 81 S.Ct. 1028, 6 L.Ed.2d 190 (1961), re-affirmed in *United States v. Weiss,* 431 F.2d 1402 (10th Cir. 1970) authorizing submission of the issue to the jury for its determination as a matter of fact under proper instructions directing the jury that it must find that a particular matter constitutes a material representation.

Significantly, of the three requested jury instructions on the materiality issue submitted by the Court, two were those prepared by counsel for Radetsky. They met the *Gonzales, supra,* standards. In my judgment no prejudice resulted to Radetsky. The jurors clearly understood the elements of the offenses charged and that which they must find beyond a reasonable doubt before returning verdicts of guilt.

Failure by Radetsky to make full disclosure under the circumstances did constitute a violation of the statute if—in the totality of the facts and circumstances reflected by this record—his intent to defraud the Government, through Medicare, was established beyond a reasonable doubt. The jury so believed. It matters not that no monetary loss or damage to the Government resulted from certain of Radetsky's actions in submitting the false claims. *United States v. Godel,* 361 F.2d 21 (4th Cir. 1966), cert. denied, 385 U.S. 838, 87 S.Ct. 87, 17 L.Ed.2d 72 (1966). The important, critical point is that a jury of Radetsky's peers found beyond a reasonable doubt in each of the 26 counts that he submitted the Request for Payment forms with a specific intent to defraud the United States. Intent is ordinarily a fact question for the jury. *United States v. Acree,* 466 F.2d 1114 (10th Cir. 1972), cert. denied, 410 U.S. 913, 93 S.Ct. 962, 35 L.Ed.2d 278 (1973). I would affirm.