**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Saleem AZAD (85–1866), Gene Amicarelli (85–1867), Michael Bigley (85–1868), Defendants-Appellants.**

**Nos. 85–1866 to 85–1868.**

United States Court of Appeals,
Sixth Circuit.

Decided Dec. 5, 1986.

Rehearing Denied Jan. 19, 1987.

Alan G. Gilchrist, Frimet, Bellamy & Gilchrist, P.C., Detroit, Mich., Michael S. Cafferty (argued), for Azad.

William F. Soisson (argued), Asst. U.S. Atty., Detroit, Mich., for U.S.

Robert M. Morgan, Detroit, Mich., for Amicarelli.

Christopher A. Andreoff, Detroit, Mich., for Bigley.

Before ENGEL, NELSON, and RYAN, Circuit Judges.

PER CURIAM.

In the course of their trial for mail fraud in connection with the operation of the Hamilton Clinic—a clinic that provided unnecessary medical and chiropractic treatment to patients insured by Blue Cross/Blue Shield—appellants Michael Bigley, Saleem Azad, and Gene Amicarelli en-

tered into plea agreements conditioned on their being allowed to challenge certain pre-trial orders on appeal. We find the challenge unavailing, and we shall affirm the judgments entered on the guilty pleas.

A federal grand jury handed down a 155 count indictment on November 30, 1984, charging eleven individuals, including the three appellants, with a scheme to defraud Blue Cross/Blue Shield of Michigan through the operation of the Hamilton Clinic. Azad was a radiologist at the clinic from July, 1981, until September, 1982. Bigley and Amicarelli were chiropractors at the clinic, Bigley having been employed there from November, 1981, until September, 1982, and Amicarelli from January to September of 1982.

According to the indictment, insured patients visiting the clinic "would be given a series of medical tests, which were unnecessary services, and which were administered primarily for the purpose of receiving payment" from Blue Cross/Blue Shield. Detailing the operation of the clinic, the indictment charged that a patient would first be directed to the chiropractic side of the clinic, where he would undergo a series of back and neck x-rays. The patient would then be directed to the medical side for further x-rays and medical tests. Upon completion of the medical tests, the patient would return to the chiropractic side to receive "some kind of massage or manipulation." At the end of treatment the patient would "be paid $30 or $50 by an employee of Hamilton Clinic using the pretext that the subscriber would do a 'commercial' for Hamilton Clinic."

The indictment further asserted that Blue Cross/Blue Shield routinely informed medical providers, such as the Hamilton Clinic, that its insurance contracts only covered "necessary services." Services "not required in and directly related to ... diagnosis or treatment of injury" were not covered. The fraud upon Blue Cross/Blue Shield consisted in the "false and fraudulent pretense that the tests and services" provided to the patients by the Hamilton Clinic "were necessary and for the purpose of diagnosis and treatment of an illness or injury." The true facts were that "in general [Blue Cross/Blue Shield] subscribers who visited the Hamilton Clinic were not present because of injury or illness," but reported injury or illness in order to receive the $30 or $50 payment.

The indictment lists 155 separate mailings made in violation of the mail fraud statute, 18 U.S.C. § 1341. The mailings included checks for payment to the clinic for services furnished to subscribers of Blue Cross/Blue Shield insurance. Each count listed the check number, the mailing date, and the check amount.

Pre-trial motions filed by the appellants included a motion to dismiss the indictment because of alleged prosecutorial misconduct before the grand jury and a motion for disclosure of the grand jury proceedings. Appellants also moved to dismiss the indictment for vagueness, to provide a bill of particulars, and to strike surplusage in the indictment. Azad, Amicarelli, and Bigley appeal the denial of these motions.

Jury selection began on June 6, 1985. Bigley and Amicarelli entered into their plea agreements on July 24, 1985, well into trial. Azad followed their example shortly thereafter. Bigley pleaded guilty to two counts and was sentenced to a prison term of 18 months and three years of probation. Bigley was also ordered to pay $7,905.40 in restitution plus a $1,000 fine. Azad entered a plea of guilty to two counts and was sentenced to one year of confinement and a year of probation. Azad promised to make restitution of $40,000 to the health insurance carrier prior to sentencing. Amicarelli pleaded guilty to a single count and was sentenced to imprisonment for one year and a $1,000 fine.

\* \* \*

Appellants initially complain of the Assistant United States Attorney's conduct before the grand jury on April 5, 1984—a date over seven months prior to the return of the indictment. Appellant Amicarelli testified before the grand jury on that date, and a short discussion took place between the Assistant United States Attorney, Mr.

F. William Soisson, and the grand jurors immediately following Amicarelli's departure from the grand jury room. This discussion spans only nine pages of the grand jury transcript, but appellants argue that a multitude of sins are recorded in those nine pages, including rendering unsworn testimony, offering personal opinions concerning witnesses' credibility, and speculating in an inflammatory manner.

This Circuit applies a strict standard for dismissal of an indictment because of alleged prosecutorial misconduct before the grand jury. The appellants must demonstrate that "prosecutorial misconduct is a long-standing or common problem in grand jury proceedings in [the] district." *United States v. Griffith*, 756 F.2d 1244, 1249 (6th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985). In addition to showing long-standing misconduct, "a defendant who seeks dismissal of an indictment . . . must show that he was prejudiced by the prosecutor's actions" before the grand jury. *Id.* Prejudice is only possible, of course, if there was some actual impropriety by the government's attorney. We agree with the district court's conclusion, made after a hearing held on March 19, 1985, that no abuse was demonstrated here.

■ What is termed by appellant Bigley the "most blatant and prejudicial" of the supposed errors is Mr. Soisson's alleged presentation of unsworn testimony to the grand jury. The most egregious exemplar is considered to be Mr. Soisson's reference to a Dr. William Nelson's expected testimony. However, as appellants perhaps unintentionally admit, the Assistant United States Attorney's comments were but a "summary." Mr. Soisson was not purporting to act as a witness; he said "I believe that [Dr. Nelson] would testify" that the Hamilton Clinic was nothing more than a "mill" and that the operation was "unethical." It is apparent from the other references objected to that the prosecutor made clear that he was merely giving the grand jurors a preview of expected testimony, and was not acting as a witness himself.

When a grand juror asked the prosecutor to explain the general theory of the indictment, and to pinpoint evidence on how the Hamilton Clinic operated, it was appropriate for Mr. Soisson to refer to the anticipated testimony and its expected source.

Appellants also complain of "highly pejorative" and prejudicial remarks regarding the veracity of Amicarelli and Bigley, and a comment referring to Amicarelli's possible operation of a chiropractic "mill" in Florida. Again, however, our interpretation of these off-hand remarks differs from the appellants'. The attorney for the United States did not directly attack the appellants' veracity, but simply noted that Bigley and Amicarelli could be considered targets of the investigation. We do not find the single comment regarding Amicarelli's business in Florida significant, particularly in view of Mr. Soisson's immediately preceding admonition to a grand juror that Amicarelli's former chiropractic practice in New York was "New York's problem," and not the concern of the Michigan grand jury.

Although we do not reach the issue of prejudice, since Mr. Soisson's replies were not inappropriate, it ought be pointed out that appellants' perception that the grand jurors were somehow swayed by Mr. Soisson's answers to their questions is based upon a misreading of the transcript. The grand jurors asked pointed questions about the direction of the investigation and injected their own opinions regarding the worth of the witnesses' testimony. There is no indication that Mr. Soisson's comments had any effect on the grand jurors' estimation of the culpability of Azad, Amicarelli, and Bigley.

■ The district court's denial of the motion for dismissal of the indictment was clearly correct. Because there was no prosecutorial impropriety, similarly, the district court did not abuse its discretion in denying appellants' motion for disclosure of grand jury proceedings. There is a strong policy in favor of maintaining the secrecy of grand jury proceedings. *United States v. Short*, 671 F.2d 178, 184 (6th Cir.), *cert. denied*, 457 U.S. 1119, 102 S.Ct. 2932,

73 L.Ed.2d 1332 (1982). Disclosure is proper only on a showing of "compelling necessity" and "particularized need." *Id., United States v. Lisinski*, 728 F.2d 887, 893 (7th Cir.), *cert. denied*, 469 U.S. 832, 105 S.Ct. 1222, 83 L.Ed.2d 64 (1984). Lacking any demonstration of prosecutorial misconduct, Azad, Amicarelli, and Bigley have failed to meet the requisite standards for disclosure of otherwise secret grand jury proceedings. A presumption of regularity attaches to grand jury proceedings, and appellants have failed to carry the "difficult burden" of proving any irregularity. *United States v. Battista*, 646 F.2d 237, 242 (6th Cir.), *cert. denied*, 454 U.S. 1046, 102 S.Ct. 586, 70 L.Ed.2d 488 (1981). The requested wide ranging search into the grand jury transcript was properly rejected.

\* \* \*

Apart from allegations of prosecutorial misconduct, appellants urge that the indictment itself was impermissibly vague and should have been dismissed, or at least augmented with a bill of particulars. Because the scheme to defraud involved the provision of unnecessary services, Amicarelli, Bigley and Azad maintain that the indictment had to list the particular unnecessary services, the specific patients concerned, and the role of each defendant in the scheme. Emphasizing that thousands of patients were arguably included within the 155 count indictment, appellants tell us that trial preparation was virtually impossible under the indictment as drawn. We reject these contentions, as did the district court.

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). The language of the statute violated may be followed in the indictment, "but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Id.* at 117–18, 94 S.Ct. at 2907–08 (quoting *United States v. Hess*, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516 (1888)). The Federal Rules of Criminal Procedure adopt this framework by requiring that the "indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c), Fed.R.Crim.P.

■ The mail fraud statute requires the establishment of but two elements: "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *United States v. Valavanis*, 689 F.2d 626, 627 (6th Cir.1982). The indictment here, including the various counts to which the three appellants pleaded guilty, obviously sets forth the two elements of the mail fraud statute. The indictment also provides the details of how this particular scheme operated to defraud Blue Cross/Blue Shield. In short, subscribers of Blue Cross/Blue Shield were induced to come to the Hamilton Clinic by the prospect of a $30 or $50 payment at the end of their "treatment." Blue Cross/Blue Shield was defrauded by the false claim that payments were being made for "necessary services." What distinguishes this indictment from the indictment found defective in *United States v. Curtis*, 506 F.2d 985 (10th Cir.1974), an opinion cited by appellants, is the clear and specific description of the fraudulent scheme found in the present indictment. The indictment before us does provide some "substantial indication of the nature or character" of the scheme involved, and "the scheme itself need not be pleaded with all the certainty in respect of time, place, and circumstance requisite in charging the mailing of the letter or other matter." *Id.* at 990. As far as the circumstances of the mailing are concerned, each count in the present indictment includes the mailing date of checks received from Blue Cross/Blue Shield, as well as the number and amount of the checks in question.

■ The second function of the indictment, that it "enables [each defendant] to

plead an acquittal or conviction in bar of future prosecutions for the same offense," *Hamling v. United States*, 418 U.S. at 117, 94 S.Ct. at 2907, has been adequately discharged here. Protection against double jeopardy is provided not only by the indictment, but by the entire record in the first prosecution. *United States v. Radetsky*, 535 F.2d 556, 563 (10th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976). It is the "record [that must show] with accuracy" whether double jeopardy may later be pleaded. *Russell v. United States*, 369 U.S. 749, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962). The record of this case poses no problem in that regard.

■ The further constitutional protection afforded by an indictment—that the defendant be tried on charges made by the grand jurors and not the prosecutor—is not lost simply because counts of the indictment covered multiple patients or procedures. This conclusion is actually supported by *United States v. Radetsky*, 535 F.2d 556 (10th Cir.1976), on which appellants rely. That case involved an indictment of a physician under the false statement statute, 18 U.S.C. § 1001, for the submission of false Medicare claim forms. The indictment was held constitutionally adequate even though it included some counts that encompassed numerous medical procedures—thereby allowing the prosecutor great leeway in choosing the particular procedure to be presented to the jury as having been falsely stated. Even if *Radetsky* had found the indictment deficient, moreover, which it did not, *Radetsky* involved 18 U.S.C. § 1001; the present appeal concerns 18 U.S.C. § 1341. A false statement is at the foundation of a violation of 18 U.S.C. § 1001, *United States v. Godwin*, 566 F.2d 975, 976 (5th Cir.1078); *United States v. Gilbertson*, 588 F.2d 584, 589 (8th Cir. 1978), while the scheme to defraud and the use of the mails are essential for conviction under the mail fraud statute. *United States v. Valavanis*, 689 F.2d 626, 627 (6th Cir.1982). There might have been doubts in *Radetsky* as to the exact false statements charged by the grand jury, given the numerous procedures included in each

count, but there is no doubt here as to the scheme and the mailings charged.

■ Finally, we are not persuaded that as a practical matter the indictment made it impossible for defense counsel to prepare for trial because of the potentially large number of patients and procedures covered by the 155 counts. As previously indicated, the scheme alleged was clear and the detailing of the use of the mails precise. We were told at oral argument that the medical and chiropractic files of the 75 or so patients who were potential trial witnesses were available for defense inspection some months prior to trial, and defense counsel did not take exception to this representation.

Under Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure, the government is required upon the request of the defendant to permit inspection of any papers or documents in the government's possession that are material to the preparation of the defense or are intended for use by the government as evidence in its case in chief. Such a defense request was served on February 8, 1985. Mr. Soisson's response of February 28, 1985, indicates that the government was already complying with the requirements of Rule 16. In any event, the district court granted a motion for discovery on April 1, 1985. No violation of Rule 16 is complained of, and the appellants clearly had an opportunity to peruse the medical records of expected patient witnesses long before trial.

Since the indictment was sufficiently specific to inform the various defendants of the charges against them, to protect them from double jeopardy, and to enable preparation for trial, the appellants' motion to dismiss was properly denied. Given the sufficiency of the indictment, we find no abuse of discretion in the district court's concomitant denial of appellants' motion for a bill of particulars. *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir.1976). We also see no abuse of discretion in the district court's decision not to strike, as

surplusage, the dollar amounts listed in the numerous counts of the indictment.

The judgments entered by the district court upon the guilty pleas of Azad, Bigley, and Amicarelli are AFFIRMED.