884 F.2d 1393
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,
v.
Harry Walker HAYES, Howard O'Brien Tharpe, Gerald Tharpe,
and Bobby Lee Harris, Defendants-Appellants,
Cross-Appellees.
 88-5735 to 88-5738 and 88-5891 to 88-5894.
 United States Court of Appeals, Sixth Circuit.
 Sept. 14, 1989.
 
 Before NATHANIEL R. JONES and BOGGS, Circuit Judges, and JULIAN COOK, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants appeal their convictions and sentences for conspiracy to possess and distribute cocaine in violation of 21 U.S.C. 841(a)(1). The Government cross-appeals the district court's judgment that the Sentencing Reform Act is unconstitutional. For the reasons that follow, we affirm the convictions of the defendants and remand the cases to the district court for resentencing.
 
 I.
 
 2
 In November 1987, Drug Enforcement Agency ("DEA") Special Agent Mark Keller commenced an undercover investigation into the alleged cocaine distribution activities of Harry Walker Hayes and his co-defendants in Nashville, Tennessee. The enterprise allegedly involved Hayes, Howard Tharpe, Gerald Tharpe, John Earl Hayes ("John"), and Bobby Lee Harris. We shall briefly summarize the events of November 17 and 18, 1987 the government presented them to the jury.
 
 
 3
 On the morning of November 17, 1987, paid DEA informant, Gary O'Saile, made arrangements with Harris to buy one ounce of cocaine, and then met Harris at his residence in Nashville. Thereafter, Harris and O'Saile proceeded to an apartment leased by Gerald Tharpe, also in Nashville, where O'Saile purchased one ounce of cocaine from two individuals identified as "Pete" and "Cory." After the sale was completed, O'Saile rewarded Harris with a "chunk" of cocaine. At the time of the purchase, O'Saile discussed with "Pete" the possibility of purchasing additional cocaine. Later that day, Harris and Agent Keller planned to meet at Tharpe's apartment to arrange a purchase of two kilograms of cocaine. However, the transaction was put off because neither party would show money or cocaine.
 
 
 4
 On November 18, 1987, Agent Keller and informant O'Saile returned to Tharpe's apartment and met with Hayes. Hayes identified himself as head of the organization and agreed to sell Keller and O'Saile two kilograms of cocaine. After the planned transaction at the Labor Temple in Nashville fell through, the group drove back to the neighborhood of Tharpe's apartment, where Hayes verified that the agents had the appropriate amount of money. During this time, a Ford Bronco vehicle, linked to Howard Tharpe, was seen cruising the area. O'Saile and Hayes then went to Bud's Market where they met James Bright and Edwina Manning, who delivered a package of cocaine to Hayes. Hayes ripped it open for O'Saile's inspection. O'Saile and Hayes then left to meet with Keller at Tharpe's apartment, where Keller was to pay Hayes for the cocaine.
 
 
 5
 When Hayes and O'Saile met Keller, the agent gave a pre-arranged arrest signal. Numerous officers then assisted with the arrests of Hayes and Gerald Tharpe, who were arrested inside the apartment. Manning and Bright were arrested shortly after leaving Bud's Market, and a kilo of cocaine was found in their car. Shortly thereafter, Howard Tharpe arrived in his Bronco and also was arrested. A small quantity of cocaine was found in his pocket and a loaded gun was found between the front seats in the Bronco.
 
 
 6
 On December 17, 1987, a multi-count indictment was returned against defendants Harry Walker Hayes, Howard O'Brien Tharpe, Gerald Tharpe, John Earl Hayes and Bobbie Lee Harris. The indictment alleged, among other things, that defendants conspired to possess and distribute in excess of five hundred grams of cocaine in violation of 21 U.S.C. 846. On March 16, 1988, a superseding indictment expanded the period of the conspiracy from "in or about November 1987" to the period from early 1987 through November 18, 1987. The trial judge granted John Earl Hayes a severance, and the trial of the four defendants in the instant case commenced on March 21, 1988 before the United States District Court for the Middle District of Tennessee, Judge Thomas A. Wiseman, Jr. presiding. The jury returned guilty verdicts for all defendants on March 25, 1988. Harry Walker Hayes was found guilty of conspiring to distribute and possess cocaine; Howard Tharpe was found guilty of conspiring to distribute and possess cocaine and carrying a firearm in relation to a drug trafficking felony; Gerald Tharpe was found guilty of conspiring to possess and distribute cocaine; and Bobby Lee Harris was found guilty of conspiring to distribute and possess cocaine and distributing cocaine. Hayes was sentenced to concurrent terms of fifteen and twelve years; Howard Tharpe was sentenced to consecutive prison terms of five, three and one years; Gerald Tharpe was sentenced to concurrent terms of ten and one years; and Harris was sentenced to two concurrent six year terms.
 
 II.
 
 7
 All four defendants contend that the district court erred in giving an Allen-type charge (a supplemental charge to the jurors) in the absence of an indication that the jury was deadlocked. In particular, defendants claim that the charge was coercive and improperly influenced the verdict. Defendants object to the trial court's charge on three grounds: (1) it improperly made references to the problems associated with resuming on Saturday after breaking on Friday night; (2) it emphasized that no clearer evidence could be produced and no fairer jury could be selected; and (3) it mentioned that the trial had been long and expensive.
 
 
 8
 The record shows that after deliberating for approximately four hours, the jury returned to the courtroom and asked the judge a question regarding the weight of the drugs. After answering the question, the judge asked the jury how long it would be deliberating. One juror stated that they would deliberate for a long time that night, while another juror indicated that he would rather stay late that night than return to continue deliberations the next day. Judge Wiseman then gave the jury a modified Allen charge, despite objections by defense counsel. The jury returned twenty-seven minutes later, finding defendants guilty of the various charges specified above.
 
 
 9
 In William v. Parke, 741 F.2d 847 (6th Cir.1984), cert. denied, 470 U.S. 1029 (1985), this court stated that an analysis of an Allen charge requires two steps. First, the reviewing court must determine whether the Allen charge was coercive. Id. at 850. Second, if the court finds that the instruction was coercive, the speed at which the verdict was reached following the charge becomes relevant to determine whether the error was harmless. Id.
 
 
 10
 We need not reach the second issue, for we determine that the Allen charge given by the trial court was not coercive. The charge neither demanded a verdict nor set a deadline. Indeed, the district judge informed the jury that it could have as much time as it needed to come to its verdict. Further, the instruction itself comports with well-approved pattern instructions. See United States v. Giacalone, 588 F.2d 1158, 1166-7 (6th Cir.1978), cert. denied, 441 U.S. 944 (1979). The Giacalone court approved an instruction that "roughly follows the instruction contained in 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, 18.14 (3d Ed.1977), an instruction implicitly approved by the Supreme Court in Kawakita v. United States, 343 U.S. 717 ... (1952)." Id. Finally, the reference to expense in the charge was stated as only one reason for the jury to make an effort to agree on a verdict. Thus, our review of the instant instruction shows that the district court did not commit error in giving the jury an Allen -type instruction.
 
 III.
 A.
 
 11
 Howard Tharpe claims that the evidence was not sufficient to prove that he possessed the firearm found in the vehicle that he was driving. In our review of sufficiency of the evidence, we must view the evidence and all reasonable inferences therefrom in the light most favorable to the Government. United States v. Gibson, 675 F.2d 825, 829 (6th Cir.1982), cert. denied, 459 U.S. 972 (1982). Here, the record supports the Government's contention that Tharpe had constructive possession of the gun found in the Bronco. In particular, the record shows that the Government agent walked over to the car, shined a flashlight through the window, and saw Tharpe. After requesting that Tharpe step out of the car, the agent leaned into the car while continuing to shine a flashlight. The agent saw a handgun located in plain view between the two front seats. Although no evidence was offered that Tharpe was the owner of the firearm or the Bronco, we find that a reasonable jury could conclude that the defendant had knowledge, dominion and control over the firearm because he was both the operator of the car and its sole passenger. See United States v. Birmley, 529 F.2d 103, 107 (6th Cir.1976). Thus, the evidence is sufficient to uphold the jury's conviction.
 
 B.
 
 12
 Defendants Howard and Gerald Tharpe next contend that they were improperly joined in the indictment. They complain that severance of their trials was mandatory because their defense, lack of knowledge of a conspiracy to sell cocaine, was antagonistic to Hayes's defense--that there had been a conspiracy to steal money from the purchasers of drugs, but no conspiracy to distribute cocaine.
 
 
 13
 Generally parties who are jointly indicted should be tried together, especially in conspiracy cases. United States v. Dempsey, 733 F.2d 392, 398 (6th Cir.1984), cert. denied, 469 U.S. 983 (1984). Rule 14 of the Federal Rules of Criminal Procedure provides that the trial court may order separate trials if it appears that defendants would be prejudiced by a joint trial. For mandatory severance to apply, defendants must prove that there is an "an inability by the jury to separate and treat differently evidence that is relevant to each particular defendant on trial." United States v. Gallo, 763 F.2d 1504, 1525 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986). We note that prejudice requires a showing of more than a greater likelihood of acquittal with severance or the offering of mutually antagonistic defenses. United States v. Day, 789 F.2d 1217, 1224 (6th Cir.1986). This court will not reverse the district court's denial of a Rule 14 motion unless a defendant can show that the district court abused its discretion. Gallo, 763 F.2d at 1524-5.
 
 
 14
 We find that the Tharpes have not suffered any prejudice as a result of the joint trial. The indictment charged a single conspiracy with Harry Walker Hayes as the head of the drug trafficking operation. The question of whether the Tharpes were improperly joined turns on "whether the numbers of conspiracies and conspirators involved were too great for the jury to give each defendant the separate and individual consideration of the evidence against him to which he was entitled." Gallo, 763 F.2d at 1526 (citation omitted). The Tharpes were alleged to be part of the conspiracy; therefore, the statements and activities of alleged co-conspirators such as Hayes were admissible against them. Fed.R.Evid. 801(d)(2)(E). Further, the Tharpes have failed to demonstrate that the jury was unable to treat evidence relevant to their defense independently and failed to show specific and compelling prejudice resulting from a joint trial. Thus, the district court's denial of the Tharpes' motion for severance was not an abuse of discretion.
 
 C.
 
 15
 Defendant Howard Tharpe contends that the district court erred by denying his motion for a Bill of Particulars. The granting of a motion for a Bill of Particulars filed pursuant to Fed.R.Crim.P. 7(f) is within the sound discretion of the trial court and this court shall not disturb the ruling of the trial court unless there was an abuse of discretion. The test in this circuit for determining whether a Bill of Particulars should issue is, whether the indictment is sufficiently specific to inform defendants of the charges against them, to protect them from double jeopardy, and to enable them to prepare for trial. United States v. Azad, 809 F.2d 291, 296 (6th Cir.1987), cert. denied, 481 U.S. 1004 (1987). See also United States v. Birmley, 529 F.2d 103, 108 (6th Cir.1976). Other courts have stated that a Bill of Particulars is not to be used as a general discovery device, United States v. Addonizio, 451 F.2d 49, 64 (3d Cir.1971), cert. denied, 405 U.S. 936 (1972). This is particularly true in a conspiracy case in which the Government is not required to disclose all overt acts alleged to have occurred in furtherance of the conspiracy.
 
 
 16
 In the instant case, the indictment was not so vague that the defendant could not discern the nature of the charges against him or the time frame of the allegations. Here, the defendant's request for a Bill of Particulars relates to an attempt to obtain additional information regarding the conspiracy, and as such, amounts to a general discovery request. Thus, the district court did not abuse its discretion when it denied defendant's request for a Bill of Particulars.
 
 D.
 
 17
 Finally, defendants offer a series of arguments for this court's consideration, all of which we reject. Harris contends that being escorted by Marshals denied him a fair trial, and that the district court abused its discretion by refusing to narrowly limit the Government's cross-examination of him. Gerald Tharpe contends: (1) that the district court abused its discretion by allowing the Government to reopen its proof to offer his prior testimony at the bond hearing; (2) that the court improperly admitted copies of phone records into evidence; (3) that the court erred in denying his motion to suppress on the basis of an affidavit in support of the search warrant of defendant's premises; (4) that the court erred in denying his motion to suppress certain statements made after he was given his Miranda warnings; (5) that the court erred in denying his motion to dismiss the superseding indictment; and (6) that the court erred in failing to limit the testimony to a witness concerning a death threat. Upon close examination of the record, we find these claims to be meritless.
 
 E.
 
 18
 In this case, the district court did not sentence defendants under the Sentencing Guidelines because it had determined that the Sentencing Reform Act was unconstitutional. The Supreme Court recently determined that the Sentencing Reform Act is constitutional. Mistretta v. United States, 109 S.Ct. 647 (1989). Thus, we remand for resentencing in light of that decision.
 
 IV.
 
 19
 Accordingly, for the reasons stated above, we AFFIRM the convictions of the defendants and REMAND the cases to the district court for resentencing.
 
 
 
 *
 The Honorable Julian Cook, United States District Judge for the Eastern District of Michigan, sitting by designation