884 F.2d 1393
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Earl HAYES, Defendant-Appellant.
 No. 88-5967.
 United States Court of Appeals, Sixth Circuit.
 Sept. 14, 1989.
 
 Before NATHANIEL R. JONES and BOGGS, Circuit Judges, and JULIAN COOK, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, John Earl Hayes, appeals his jury convictions for conspiring to possess and distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1) (1982) and 21 U.S.C. Sec. 846 (1982), and for distributing cocaine in violation of 18 U.S.C. Sec. 2 (1982) and 21 U.S.C. Sec. 846 (1982). For the following reasons, we affirm.
 
 I.
 
 2
 This appeal concerns the alleged November 17, 1987 sale of cocaine by Hayes to a Drug Enforcement Agency ("DEA") paid informant, Gary O'Saile. In order to understand the issues in this case, it is necessary to begin with events which occurred in July 1987. On the morning of July 4, 1987, Hayes, along with three others in a car owned by Hayes's girlfriend, was arrested by the Nashville police. The police found $1,725.00 in currency on his possession, and they found a significant amount of drugs in the automobile. Other than through constructive possession, none of the drugs found in the vehicle were linked to Hayes, and no drugs were found on his person. After Hayes was arrested, the police searched an apartment where Hayes had been staying, and discovered numerous narcotics paraphernalia. Hayes entered a provisional plea of guilty to simple possession of cocaine and was placed on probation for eleven months. All of the individuals in the vehicle were ultimately convicted of possessing the drugs.
 
 
 3
 On November 17, 1987, O'Saile and DEA Agent Mark Keller contacted Bobby Harris, a suspected drug dealer, regarding the sale of one ounce of cocaine. Harris then took O'Saile to a house in Nashville, Tennessee where O'Saile allegedly purchased one ounce of cocaine for $1100.00 from Hayes. O'Saile claims that Hayes, who identified himself at that time as "Pete," displayed three bags of cocaine and invited O'Saile to select any bag. In addition, during the twenty minutes O'Saile spent in the apartment, Hayes allegedly told him that his organization had four or five kilograms of cocaine for sale. Agent Keller later observed Hayes exiting the apartment in which the sale had occurred.
 
 
 4
 On November 18, 1987, another of Hayes's alleged co-conspirators, Harry Walker Hayes (Harry), made arrangements to sell two kilograms of cocaine to Keller and O'Saile at the same house in Nashville. That attempted sale was interrupted when Harry and other alleged co-conspirators, including Harris, were arrested. John Earl Hayes was indicted and arrested on December 17, 1987. At the time of the arrest, Hayes was in possession of $1,449.00 in small denominations. On March 16, 1988, a superseding indictment was returned charging Hayes with conspiring with the other named defendants from early 1987 until November 18, 1987 to possess and distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 21 U.S.C. Sec. 846 (Count 1) and for distributing cocaine on November 17, 1987 in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2.
 
 
 5
 On March 21, 1988, the United States District Court for the Middle District of Tennessee, Judge Thomas A. Wiseman presiding, granted Hayes's motion to sever his trial from those of his co-defendants, allowing him to be tried independently. Hayes's trial commenced on June 13, 1988, and on June 15, 1988, the jury found Hayes guilty on both counts. On August 29, 1988, the court sentenced Hayes to two concurrent ninety-six month prison terms on counts one and two. This timely appeal followed.
 
 II.
 
 6
 Hayes presents three challenges to his conviction. First, he claims that the trial court erred in admitting evidence concerning the July 4, 1987 arrest. Second, he argues that the trial court erred in denying his Bill of Particulars. Third, Hayes contends that O'Saile's in-court identification of him was tainted, thus violating the Due Process Clause.
 
 A.
 
 7
 Hayes contends that the admission of his July 4, 1987 narcotics arrest, which occurred within the time frame of the alleged conspiracy, unfairly prejudiced the jury and generally established a predisposition to commit criminal acts in violation of Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) provides:
 
 
 8
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action and conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 9
 In United States v. Dunn, 805 F.2d 1275, 1280 (6th Cir.1986), this court stated that when other crimes are introduced for a purpose other than those set forth in Rule 404(b), "the evidence must nonetheless be subject to [a] Rule 404(b) inquiry in order to insure that it is not used to show ... the defendant's bad character or criminal propensity." Further, even if the evidence withstands Rule 404(b) scrutiny, if the probative value of the evidence is outweighed by the danger of unfair prejudice, it must be excluded under Rule 403. Id.
 
 
 10
 Hayes claims that the challenged evidence failed to satisfy the test provided in Rule 403. Specifically, Hayes argues that the Government's failure to link him to the drugs found in the car on July 4 rendered evidence of this earlier arrest inadmissible because it showed only a predisposition to commit a crime. In support of this proposition, Hayes offers United States v. Bramble, 641 F.2d 681, 682-83 (9th Cir.1981), cert. denied, 459 U.S. 1072 (1982) (an entrapment case where the Ninth Circuit Court of Appeals reversed a defendant's conviction for selling cocaine). The trial court in Bramble allowed the Government to introduce evidence of the defendant's prior conviction for possession of marijuana. Because the Ninth Circuit determined that the evidence was admitted solely to show the defendant's propensity to sell cocaine, the court reversed the conviction. Relying on Bramble, Hayes maintains that the introduction of his prior arrest and conviction for simple possession of cocaine and marijuana was introduced solely to show his propensity to commit criminal acts and, therefore, was more prejudicial than probative.
 
 
 11
 At trial, the Government presented the testimony of a Government agent who saw Hayes exiting the apartment in which the November 17 transaction occurred. In addition, at the time of his arrest Hayes was in possession of an unusually large sum of currency in small bills. Finally, the fact that Hayes's sale of one ounce of cocaine was a precursor to Harry's attempted sale of two kilograms of cocaine to Agent Keller is extremely probative of Hayes's involvement in the conspiracy. Thus, because of the strength of the evidence which implicated Hayes in the drug conspiracy, the evidence of Hayes's July 4 arrest could reasonably be thought to have had no prejudicial effect. Even without that evidence, Hayes would have been convicted. Therefore, since the evidence resulted in no unfair prejudice to Hayes, we hold that district court did not abuse its discretion by deciding to admit the extrinsic evidence.
 
 B.
 
 12
 Hayes filed a motion for a Bill of Particulars, in which he requested that certain evidentiary details, including the names and addresses of any co-conspirators known to the Government and not named in the conspiracy count, be conveyed to him to supplement the allegations of count one of the indictment. Hayes contends that he never sold O'Saile an ounce of cocaine while using the name "Pete," and that the district court's failure to compel the Government to file a Bill of Particulars in which the Government listed all the unindicted co-conspirators it was aware of, prevented him from proving this fact. With the requested information, Hayes maintains he could have conducted an independent investigation to ascertain the identity of the true "Pete."
 
 
 13
 The granting of a motion for a Bill of Particulars filed pursuant to Fed.R.Crim.P. 7(f) is within the sound discretion of the trial court and this court shall not disturb the ruling of the trial court unless there was an abuse of discretion. The test in this circuit for determining whether a Bill of Particulars should issue is whether the indictment is sufficiently specific to inform defendants of the charges against them, to protect them from double jeopardy, and to enable them to prepare for trial. United States v. Azad, 809 F.2d 291, 296 (6th Cir.1986), cert. denied, 481 U.S. 1004 (1987). See also United States v. Birmley, 529 F.2d 103, 108 (6th Cir.1976). Other courts have stated that a Bill of Particulars is not to be used as a general discovery device, United States v. Addonizio, 451 F.2d 49, 64 (3d Cir.1971), cert. denied, 405 U.S. 936 (1972). This is particularly true in a conspiracy case in which the Government is not required to disclose all overt acts alleged to have occurred in furtherance of the conspiracy.
 
 
 14
 In the instant case, the superseding indictment alleged that the conspiracy was in existence between early 1987 until November 17, 1987 (Count 1). Thus, Hayes's request for every detail about the conspiracy, including the names and addresses of any co-conspirators not named in the indictment, the date when he allegedly joined the conspiracy, and the period of time each co-conspirator known to the Government remained involved in the conspiracy, can best be characterized as a request for general discovery. We agree with the district court's conclusion that the indictment was not so vague that Hayes could not discern the nature of the charges pending against him and the time frame in which the alleged acts occurred, or that the indictment did not provide him with adequate information to prepare a defense. In addition, since the government agreed to his request, this obviated the need for a Bill of Particulars. Accordingly, we find that the district court did not abuse its discretion in denying Hayes's motion.
 
 C.
 
 15
 Finally, Hayes contends that O'Saile's in-court identification of him was tainted by a prior inadvertent photographic identification of Hayes by O'Saile. Specifically, O'Saile identified a mug shot of Hayes which was lying on Agent Keller's desk in the Nashville DEA office. Hayes contends that the photograph display was impermissibly suggestive, giving rise to a violation of the Due Process Clause. In Neil v. Biggers, 409 U.S. 188, 199-200 (1972), the Supreme Court set forth a five factor test to be considered in determining whether an identification is reliable and satisfies due process requirements: "(1) the opportunity for the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; (5) the length of time between the crime and the confrontation." Under this test, we must determine if the identification was reliable even though a confrontation procedure was suggestive. Id.
 
 
 16
 Applying the Biggers factors to our facts, we find the in-court identification of Hayes to be reliable. First, both agents had an opportunity to view Hayes on November 17, 1987. Keller saw the man that he identified as Hayes exit the apartment where drugs had just been sold. On the same day, O'Saile negotiated with the man that he identified as Hayes for twenty minutes in the apartment. Second, the record indicates that both eyewitnesses were unusually attentive, given that both agent and informant were involved in dangerous undercover work. Third, with respect to the accuracy of the description, although O'Saile's description of Hayes varies to some extent from Hayes's actual physical characteristics, Keller supplied a substantially accurate description of Hayes. Fourth, the witnesses level of certainty about the identification is very high. Since both witnesses promptly identified Hayes as the individual who sold drugs on November 17, 1987, based on their independent recollection of the incident on that date, it does not appear that any previously forgotten elements of the event were recalled by the accidental inspection of the snapshot. Finally, in terms of elapsed time between the crime and the identification, the record shows that the identification was made in early December 1987, less than a month after the November 17, 1987 incident.
 
 
 17
 Based on the foregoing, the independent display of the snapshot was not inherently suggestive and did not taint the in-court identification of Hayes. Hayes's claims properly address the appropriate weight given to the testimony; they do not render the testimony so unreliable as to mandate its exclusion. United States v. Causey, 834 F.2d 1277, 1285 (6th Cir.1987). Thus, we find Hayes's challenge to his in-court identification to be meritless.
 
 II.
 
 18
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Julian A. Cook, United States District Judge for the Eastern District of Michigan, sitting by designation