**UNITED STATES of America,**
**Plaintiff,**

v.

**Bradley Harold BOETTCHER,**
**Defendant.**

**No. CR. 01–50024.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 1, 2001.

Nancy A. Abraham, U.S. Attorney's Office, Flint, MI, for plaintiff.

Charles A. Grossmann, Flint, MI, for defendant.

## OPINION AND ORDER

GADOLA, District Judge.

Before the Court are two pretrial motions by Defendant: 1) Defendant's Motion For Hearing To Determine If The Government's Prosecution Violates Double Jeopardy ("Motion For Hearing") [docket entry 6]; and 2) Defendant's Motion To Dismiss Due To Prosecutorial Misconduct Before The Grand Jury ("Motion to Dismiss") [docket entry 7].

The Court heard oral argument and held an evidentiary hearing on these matters on September 18, 2001. Following the evidentiary hearing, Defendant conceded his double jeopardy claim in open court. Therefore, the Court denies Defendant's Motion For Hearing as moot. In addition, for the reasons set forth below, the Court denies Defendant's Motion To Dismiss.

## I. BACKGROUND

On October 15, 1999, officers from the Mid–Michigan Area Group Narcotics Enforcement Team ("MAGNET") executed a search warrant at Defendant's home in Durand, Michigan. The search warrant was based on a tip by Defendant's teenage daughter. MAGNET officers seized approximately 129 marijuana plants and 195 pounds of processed marijuana from a barn on Defendant's property. Additionally, MAGNET officers seized approximately two ounces of marijuana from a cabinet in Defendant's garage and found a trace of marijuana in Defendant's residence. Officers also located a triple beam scale in Defendant's garage. General Motors officials were also present during the search as some of the items located during the search of Defendant's property were alleged to belong to General Motors.

On December 28, 1999, Defendant was charged in state court with three counts of violating state law: 1) possession with in-

tent to deliver marijuana; 2) manufacture of marijuana; and 3) receiving and concealing stolen property.

On August 30, 2000, Defendant entered a plea before the state court. Pursuant to the plea agreement, Defendant pleaded guilty to two additional counts: a lesser felony count of receiving and concealing stolen property and a misdemeanor count of possession of marijuana. In consideration of Defendant's plea, the state agreed to dismiss the first three counts of the original indictment at sentencing. On October 26, 2000, Defendant was sentenced in the Shiawassee County Circuit Court to three years probation and five months in the Shiawassee County Jail.

The federal investigation of Defendant began in either late November or early December, 2000, based on a referral from state MAGNET officers. A federal grand jury returned a three count indictment against Defendant on June 13, 2001. The indictment charged Defendant with conspiracy to manufacture and possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846; possession with intent to distribute marijuana in violation of 21 U.S.C. § 841; and maintaining a drug establishment in violation of 21 U.S.C. § 856.

## II. DISCUSSION

Defendant requests that the Court dismiss the indictment returned against him due to prosecutorial misconduct before the grand jury. Defendant claims that the Assistant United States Attorney ("AUSA") improperly presented hearsay evidence to the grand jury and led the grand jury to believe that Defendant had threatened his daughter, Brooke Boettcher, a key witness against Defendant. Defendant's argument is based upon a series of comments made by the AUSA and a Special Agent with the Drug Enforcement Administration ("DEA") who testified before the grand jury. The DEA agent was presented to the grand jury to summarize statements that Brooke Boettcher made during a December, 2000, interview with the AUSA which the agent had attended.

Defendant cites a comment made by the AUSA in response to a grand juror's question as to why Brooke Boettcher would not be testifying before the grand jury. The AUSA stated in response, "I had made a determination not to put her in the Grand Jury. One, because she's out of the state .... and two, because she has some personal fears. I mean she ratted on her dad kind of thing." (R. 27, March 21, 2001, *cited in,* Def. Br. at 2).[1]

Defendant also cites the DEA agent's response to a grand juror's question regarding why the government had not recorded the interview with Brooke Boettcher. In response to a question from the AUSA, the DEA agent affirmed that Brooke Boettcher was willing to come forward to testify. The AUSA continued, asking the DEA agent, "And she did indicate however though that she has some personal fear towards her father?" (R. 16, May 2, 2001, *cited in,* Def. Br. at 4).

In response to this question, the DEA agent stated,

> Yes. She's—I would stop short of saying she has received threats, but they have been getting phone calls in North Carolina. The people have been sending them newspaper articles about this. The—so she is a little concerned.... She did—she caught a lot of heat so to speak from friends of hers who, you know, she realized that after doing this—this was in the paper apparently when this happened. And, you know,

---

1. Citations are to the record of testimony taken before the federal grand jury.

she told me that the people she thought were her friends turned out not to be because they were—did not agree with her turning in her dad for this marijuana. . . . So she—she caught a lot of problems at school, was not able to finish out her senior year there. Her dad disowned her at that time.

(R. 16–17, May 2, 2001, *cited in,* Def. Br. at 4).

In response to the DEA agent's statement, a grand juror replied, "If she was subpoenaed to come and testify, all measure . . . would be taken for her safety, isn't that correct?" (R. 17, May 2, 2001, *cited in,* Def. Br. at 4). The DEA agent replied, "Oh, sure, yes." (R. 17, May 2, 2001, *cited in,* Def. Br. at 4).

## A. LEGAL STANDARD

The Supreme Court has held that "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). In addition, the Court noted that "a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)." *Id.* at 254–55, 108 S.Ct. 2369 (citing Fed.R.Crim.P. 52(a), which states that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded").[2]

Since *Bank of Nova Scotia,* the Supreme Court has further delineated the supervisory powers of the federal courts in the context of grand juries. *See United States v. Williams,* 504 U.S. 36, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). In *Williams,* the Court explained that under *Bank of Nova Scotia,* a federal court may use its supervisory power to dismiss an indictment due to prosecutorial misconduct before a grand jury "at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.'" *Williams* 504 U.S. at 46, 112 S.Ct. 1735 (quoting *United States v. Mechanik,* 475 U.S. 66, 74, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)) (O'Connor, J., concurring). However, the Court also clarified the limits of the federal supervisory power:

> We did not hold in *Bank of Nova Scotia,* however, that the courts' supervisory power could be used, not merely as a means of enforcing or vindicating legally compelled standards of prosecutorial conduct before the grand jury, but as a means of *prescribing* those standards of prosecutorial conduct in the first instance—just as it may be used as a means of establishing standards of prosecutorial conduct before the courts themselves.

*Williams,* 504 U.S. at 46–47, 112 S.Ct. 1735.

Further, the Court made clear that "[b]ecause the grand jury is an institution separate from the courts, over whose functioning the courts do not preside, we think

---

**2.** The Court noted that the harmless error analysis would not be appropriate in cases involving "fundamental" errors, "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia,* 487 U.S. at 256–57, 108 S.Ct. 2369. The Court cited as examples cases involving racial discrimination in the selection of grand jurors and the exclusion of women from the grand jury. In such cases, prejudice to the defendant could be presumed, and "any inquiry into harmless error would have required unguided speculation." *Id.* It appears clear that the present case does not involve such a "fundamental" error.

it clear that, as a general matter at least, no such 'supervisory' judicial authority exists . . . ." *Id.* at 47, 112 S.Ct. 1735.

The Sixth Circuit has urged caution in dismissing grand jury indictments, noting "the well-accepted principle that grand jury indictments are presumed valid." *United States v. Overmyer,* 899 F.2d 457, 465 (6th Cir.1990). Thus, in addressing cases involving alleged prosecutorial misconduct before a grand jury, the Sixth Circuit has established a two part inquiry. *United States v. Griffith,* 756 F.2d 1244, 1249 (6th Cir.1985). First, "a court may not order dismissal of an indictment under its supervisory power unless the defendant demonstrates that 'prosecutorial misconduct is a long-standing or common problem in grand jury proceedings in [the] district.' " *Id.* (alteration in original) (citation omitted). Next, a defendant must also demonstrate that the prosecutor's actions caused the defendant actual prejudice. *Id.; accord, United States v. Azad,* 809 F.2d 291, 294 (6th Cir.1986).

**B. ANALYSIS**

In light of Supreme Court and Sixth Circuit precedent, it appears clear that a district court's power to dismiss a grand jury indictment is limited. The Supreme Court has commented upon the limited federal supervisory power of the district courts in the grand jury context, *Williams,* 504 U.S. at 46–47, 112 S.Ct. 1735, and the Sixth Circuit has noted that grand jury indictments receive a presumption of validity. *Overmyer,* 899 F.2d at 465.

The Court finds that Defendant has not proven the existence of prosecutorial misconduct under the standard outlined by the Sixth Circuit in *Griffith.* First, Defendant has not addressed the issue of whether " 'prosecutorial misconduct is a long-standing or common problem in grand jury proceedings in [the] district.' " *Griffith,* 756 F.2d at 1249 (alteration in original)

(citation omitted). Because Defendant has not produced evidence of such ongoing misconduct by prosecutors in the Eastern District of Michigan, Defendant has not met the first part of the burden established in *Griffith.* Next, the Court finds that Defendant has not demonstrated actual prejudice, as the Sixth Circuit also requires. *Griffith,* 756 F.2d at 1249.

The Supreme Court has established a standard for assessing prejudice in cases where a defendant seeks dismissal of a grand jury indictment due to nonconstitutional errors. *Bank of Nova Scotia,* 487 U.S. at 256, 108 S.Ct. 2369. In such cases, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* (quoting *United States v. Mechanik,* 475 U.S. 66, 74, 106 S.Ct. 938, 89 L.Ed.2d 50 (O'Connor, J., concurring)).

Defendant argues that the AUSA and the DEA agent "created a false aura that Brooke had been threatened by her father" and that "[t]he grand jury's concern shifted from making an independent inquiry into [Defendant's] involvement, to a concern for the safety of Brooke." (Def. Br. at 6, 7). Defendant also contends that the Government intentionally kept Brooke Boettcher from the grand jury and did not record her testimony so that the DEA agent could characterize her testimony in a way favorable to the government's case. (Def. Br. at 6, 7).

In support of his argument, Defendant compares the AUSA's conduct in this case to the conduct of the prosecutor in *United States v. Hogan,* 712 F.2d 757, 761 (2d Cir.1983), a case which the Sixth Circuit discussed in *Overmyer. See* 899 F.2d at 465. In *Hogan,* the Second Circuit found "the impartiality and independent nature of the grand jury process . . . seriously

impaired by the AUSA's argument that [defendant] Hogan was a real hoodlum who should be indicted as a matter of equity." 712 F.2d at 761. Further, the prosecutor in *Hogan* had used "extensive hearsay and double hearsay speculation regarding [defendant] Hogan's involvement in two murders, corrupt activities as a policeman," and reasons that Hogan had terminated a proposed drug deal. *Id.*

In *Overmyer,* the AUSA had elicited evidence before the grand jury that the defendant had been indicted and tried on an unrelated criminal charge, but the prosecutor failed to inform the grand jury of the defendant's acquittal. 899 F.2d at 465. The Sixth Circuit held that the AUSA's action, while not endorsed, did not rise to the level of misconduct present in *Hogan. Id.* The court stated that there was no evidence that the AUSA's action "was deliberate or was delivered in a manner calculated to inflame the grand jury." *Id.*

In the present case, the references by the AUSA and DEA agent to Brooke Boettcher's fear of testifying do not seem to rise to the level of misconduct present in *Hogan.* While the AUSA and the DEA agent may have created an impression that Brooke Boettcher was fearful of testifying, neither expressly stated that Defendant had threatened his daughter. Further, the Court agrees with the Government's argument that a teenage girl who turned in her father to the police would likely be apprehensive about returning from out of state in order to testify against him. Finally, Defendant does not explain why the grand jury would choose to ignore the other evidence presented by the Government beyond the hearsay statements of Brooke Boettcher. *See e.g.,* Testimony of Agent Mark Piercecchi, Mar. 21, 2001 (describing execution of search warrant). Evaluating Defendant's claims against the

standards established by the Supreme Court and the Sixth Circuit, Defendant has failed to establish that the prosecutor's conduct rises to a level warranting dismissal of the indictment. *See Bank of Nova Scotia,* 487 U.S. at 256, 108 S.Ct. 2369 ("dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations.") (quoting *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 89 L.Ed.2d 50 (O'Connor, J., concurring)).

■ Defendant also suggests that the use of hearsay evidence before the grand jury constituted or at least contributed to prosecutorial misconduct. Defendant claims that the Government used a hearsay rendition of Brooke Boettcher's testimony without "cogent reason." (Def. Br. at 5, 6) (citing *Hogan,* 712 F.2d at 761). In support of his argument, Defendant relies primarily on *Hogan.* In *Hogan,* the Second Circuit indicated that while the use of hearsay evidence before a grand jury is not prohibited, such evidence is disfavored and should not be used if it would deceive the grand jury as to the quality of testimony being presented. *See* 712 F.2d at 761. The *Hogan* court found that the AUSA's use of hearsay evidence created the possibility of deception in that case. *Id.*

Despite the reasoning in *Hogan,* the Supreme Court has held that an indictment may be based solely on hearsay evidence. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The Court noted that "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Id.* (footnote omitted).[3] Further,

3. The Sixth Circuit has interpreted the term "biased" as used by the Supreme Court in

the law of the Sixth Circuit on the use of hearsay evidence before a grand jury is equally clear. *United States v. Mack*, 837 F.2d 254, 259 (6th Cir.1988) (noting that "[i]t has long been established, however, that a defendant may be indicted by a grand jury relying solely on hearsay evidence").

In addition, the use of hearsay evidence in this case does not appear to be nearly as egregious as the use of such evidence in *Hogan*, upon which Defendant relies. In *Hogan*, the court was concerned with the AUSA using hearsay evidence to deceive the grand jury. *See* 712 F.2d at 761. In the present case, it appears clear that the AUSA did not attempt to deceive the grand jury as to the quality of the hearsay testimony. At one point, a grand juror asked, "So if we do hear from [Brooke Boettcher] it will be through hearsay testimony?" (R. 28, March 21, 2001). The AUSA responded, "Principally, yes. If you ... want her subpoenaed and you want to see her yourself and judge her credibility yourself, just let me know and I will issue a subpoena on your behalf and have her here ... without a problem." (R. 28, March 21, 2001). Further, the DEA agent stated before the grand jury that he had attended an interview with Brooke Boettcher in December, 2000. (R. 3, May 2, 2001). When the DEA agent was before the Grand Jury, the AUSA asked him, "Can you tell the Grand Jury in summary form what Brook[e] had told you about knowledge of marijuana or her father's marijuana use prior to October of 1999?" (R. 4, May 2, 2001). Thus, it appears clear that the Grand Jury was not deceived as to the quality of the DEA agent's testimony or the basis of his knowledge. Therefore,

the Court finds that the use of hearsay evidence did not taint the grand jury proceedings.

For the reasons stated above, the Court denies Defendant's Motion To Dismiss.

## CONCLUSION

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendant Bradley Harold Boettcher's Motion For Hearing [docket entry 6] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant Bradley Harold Boettcher's Motion To Dismiss [docket entry 7] is **DENIED**.

**SO ORDERED.**

---

*Costello* to "refer[ ] to a grand jury which is predisposed in one way or another at the time of selection." *United States v. Adamo*, 742 F.2d 927, 936 (6th Cir.1984). In this case, Defendant appears to make a challenge similar to that in *Adamo*, claiming in effect that

the grand jury was made biased by the misconduct of the prosecutor. *Id.* However, as the discussion indicates, the Court finds that Defendant has not met the burden of proving prosecutorial misconduct.